[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 21, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-16759

_____

D. C. Docket No. 00-00876-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

REO LEONARDO HUNTER,
a.k.a. Demarco Hill, etc.,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
for the Northern District of Georgia

_____

**(May 21, 2002)**

Before WILSON, RONEY and ALARCÓN*, Circuit Judges.

ALARCÓN, Circuit Judge:

_____

*Honorable Arthur L. Alarcón, U.S. Circuit Judge for the Ninth Circuit,
sitting by designation.

The Government appeals from the grant of Reo Leonardo Hunter's motion to suppress evidence obtained as a result of a stop and frisk. It seeks reversal of the order on the ground that the district court erred in concluding that the stop and frisk was not supported by reasonable suspicion. We vacate the order granting Mr. Hunter's motion to suppress because we conclude that there was reasonable suspicion to stop and frisk Mr. Hunter.

I

On November 3, 1999, at 2:30 p.m., Officer Willie Adams and two other officers of the Atlanta Police Department were riding in a marked City of Atlanta patrol car. The three officers were members of the police department's Red Dog Unit, a unit responsible for patrolling high crime areas. Officer Adams had been a law enforcement officer for approximately nine years. As they approached a convenience store at 1623 Pryor Road, one of the "hot spots" in the area for criminal activity, the officers saw several men in the store's parking lot rolling dice and exchanging money. The men were engaged in illegal gambling. Mr. Hunter was standing next to the gamblers.

The officers quickly exited the patrol car. Officer Adams observed Mr. Hunter start to walk away "very quickly." As Mr. Hunter turned his body, Officer Adams noticed a bulge in Mr. Hunter's waistband. Officer Adams then walked up

2

very quickly behind Mr. Hunter and frisked him. He discovered a pistol with an obliterated serial number in the waistband of Mr. Hunter's pants.

On December 12, 2000, Mr. Hunter was indicted by a federal grand jury in the Northern District of Georgia for knowingly possessing a firearm after having been convicted of several felonies, in violation of 18 U.S.C. § 922(g), and for knowingly possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). Mr. Hunter filed a motion to suppress the pistol on the ground that Officer Adams lacked reasonable suspicion for the stop and frisk. Magistrate Judge E. Clayton Scofield, III held a hearing on the suppression motion on July 19, 2001.

Following the hearing, Judge Scofield issued a report and recommendation, in which he opined that Mr. Hunter's motion to suppress should be granted because the stop and frisk of Mr. Hunter was not supported by reasonable suspicion. The Government filed objections to Judge Scofield's report and recommendation. On October 19, 2001, the district court signed an order adopting Judge Scofield's report and recommendation and granting Mr. Hunter's motion to suppress. The district court's order was entered on the criminal docket on October 22, 2001. The Government filed a notice of appeal on November 20, 2001.

II

This action arises under 18 U.S.C. § 922. The district court had jurisdiction over the action pursuant to 18 U.S.C. § 1326. We have jurisdiction from the order granting the motion to suppress evidence pursuant to 18 U.S.C. § 3731.

At oral argument, counsel for Mr. Hunter suggested that this court lacked jurisdiction because the instant appeal was untimely. We requested further briefing. After having reviewed and considered the letter briefs submitted by the parties, we conclude that the instant appeal was timely and that this court has jurisdiction. The order granting Mr. Hunter's motion to suppress was entered on the criminal docket on October 22, 2001. The Government filed its notice of appeal on November 20, 2001. The notice of appeal was therefore filed within thirty days of the date the order was entered on the criminal docket. *See* Fed. R. App. P. 4(b)(1)(B)(i) (providing that when the Government appeals an adverse decision, the notice of appeal must be filed within thirty days of "the entry of the judgment or order being appealed"); *see also* Fed. R. App. P. 4(b)(6) (defining "entry" of the judgment or order as "when it is entered on the criminal docket.").

III

The Government contends that given the totality of the circumstances surrounding the stop and frisk of Mr. Hunter, Officer Adams had reasonable

4

suspicion to believe that Mr. Hunter was involved in criminal activity and may have been armed with a weapon. We review for clear error a district court's findings of fact on a motion to suppress. *United States v. Gonzalez*, 71 F.3d 819, 824 (11th Cir. 1996). We review *de novo* its application of the law to those facts. *Id.*

The Supreme Court has instructed that an officer may conduct a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot, without violating the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). To determine whether reasonable suspicion exits, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 122 S. Ct. 744, 750 (2002) (citation omitted); *United States v. Cortez*, 449 U.S. 411, 417 (1981). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 122 S. Ct. at 750-51 (citation omitted). The totality of the circumstances must support a finding of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the

5

stop and frisk. *Terry*, 392 U.S. at 21. In evaluating the totality of the circumstances in a given case, the court may not consider each fact in isolation. *Arvizu*, 122 S. Ct. at 750-51 (2002) (rejecting the approach taken by the Ninth Circuit in attempting to delimit the extent to which certain factors may be considered as a type of "divide-and-conquer analysis."). The Court held in <u>Arvizu</u> that reasonable suspicion may exist even if each fact alone is susceptible to an innocent explanation. *Id.* at 751, 753. Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

The Government points to the following facts in support of its contention that the stop and frisk of Mr. Hunter was supported by reasonable suspicion: (1) Mr. Hunter was in a high crime area, known for drug and firearm arrests; (2) Mr. Hunter was standing over and observing unlawful gambling; (3) Mr. Hunter saw the police approach and then began to walk quickly away; and (4) as Mr. Hunter turned to walk away, Officer Adams saw a bulge in his waistband.

We agree with the Government that each of these factors may be considered in determining whether the totality of the circumstances demonstrates a reasonable

6

suspicion that criminal activity was afoot. First, the reputation of an area for criminal activity may be considered when determining whether circumstances are "sufficiently suspicious" to warrant further investigation. *United States v. Gordon*, 231 F.3d 750, 755-56 (11th Cir. 2000). In the instant case, Mr. Hunter was in a high-crime area when Officer Adams stopped him. Second, an individual's proximity to illegal activity may also be considered. *United States v. Brown*, 159 F.3d 147, 150 (3d Cir. 1998). Mr. Hunter was standing next to and observing illegal gambling moments before Officer Adams stopped him. Third, an individual's flight from the scene of illegal activity upon the arrival of the police may also be considered in the totality of the circumstances. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *Gordon*, 231 F.3d at 756. In the instant case, Mr. Hunter walked quickly away from the illegal gambling activity when the officers approached. Fourth, the presence of a visible, suspicious bulge on an individual may be considered in the totality of the circumstances. *See United States v. Davis*, 94 F.3d 1465, 1470 (10th Cir. 1996) (indicating that the presence of a "suspicious bulge" can support an investigative stop). The record shows that Officer Adams saw a bulge in Mr. Hunter's waistband when Mr. Hunter turned to walk away.

In light of the totality of these circumstances, we conclude Officer Adams had reasonable suspicion that Mr. Hunter was engaged in illegal gambling activity

and was carrying a concealed weapon. Accordingly, Officer Adams's stop of Mr. Hunter was supported by reasonable suspicion.

An officer who has a reasonable suspicion that an individual is engaged in illegal activity and is armed with a concealed weapon is justified in conducting a limited search for weapons. *Terry*, 392 U.S. at 24. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. If reasonable suspicion supports a *Terry* stop, the officer's observation of a bulge under a defendant's shirt at the waist warrants a pat-down for weapons to ensure the officer's safety. *United States v. Pantoja-Soto*, 768 F.2d 1235, 1236 (11th Cir. 1985).

IV

We VACATE the order granting Mr. Hunter's motion to suppress because the record shows that Officer Adams had a reasonable, articulable suspicion that criminal activity was afoot when he stopped and frisked Mr. Hunter. We REMAND for further proceedings regarding the merits of the indictment.