[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 14, 2005
THOMAS  K. KAHN
CLERK**

No. 05-11508
Non-Argument Calendar

D.C. Docket No. 03-00183-CR-F-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL DELOW MEDLOCK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(October 14, 2005)**

Before DUBINA, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Appellant Michael Delow Medlock appeals his conviction and 108-month sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On appeal, Medlock argues that the district court (1) erred by denying his motion to suppress where the investigating officer who discovered the firearm in his back pocket lacked reasonable suspicion to conduct a stop-and-frisk search pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (2) violated *United States v. Booker*, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), by applying a two-level enhancement under U.S.S.G. § 2K2.1(b)(4) for possession of a stolen firearm based on facts that were not proved beyond a reasonable doubt or admitted by him.

Upon a thorough review of the record on appeal, including the transcripts of the suppression, change-of-plea, and sentencing hearings, as well as the presentence investigation report ("PSI"), and after consideration of the briefs of the parties to this court, we find no reversible error and affirm.

I.

Medlock first argues that Montgomery Police Officer Jason Lloyd Brosius did not have an independent reasonable suspicion that Medlock was in possession of a weapon. Medlock contends that the named informant who contacted the police regarding an individual with a gun did not reasonably identify him as a

2

suspect because the call referenced only two men (one of whom was in a wheelchair), while Officer Brosius observed three men when he responded to the scene. Medlock further states that there was nothing inherently suspicious about any of the three mens' actions in crossing the street, and that it was not unusual for individuals to be outside at night in the residential area where the relevant events occurred. Medlock asserts that another individual's separate act of throwing down a baggie of marijuana near the officers' patrol car did not raise any reasonable suspicion regarding Medlock's own conduct and did not justify an investigatory search. Finally, Medlock argues that this case is similar to *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), because the calls received by the police did not contain any inherently reliable description of illegal conduct, and the officers "did not observe illegal or even unusual conduct."

On appeal of a district court's ruling on a motion to suppress, we review the district court's factual findings for clear error and its application of the law to those facts *de novo*. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000). The facts must be construed in the light most favorable to the party that prevailed in the district court. *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000).

The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Although warrantless searches are

3

presumptively unreasonable, the Supreme Court in *Terry* recognized a narrow exception, noting that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000)). When evaluating whether such reasonable suspicion exists, the district court must examine the totality of the circumstances to determine whether the arresting officer had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002)) (internal quotations omitted). The reputation of an area for criminal activity is a factor that may be considered when determining whether reasonable suspicion exists. *Gordon*, 231 F.3d at 755-56.

"An officer who has a reasonable suspicion that an individual is engaged in illegal activity and is armed with a concealed weapon" may search the individual for weapons. *Hunter*, 291 F.3d at 1307. The test is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883).

According to the Supreme Court, an uncorroborated, anonymous tip that a person is carrying a gun does not provide a police officer with reasonable suspicion to stop and frisk that person. *Florida v. J.L.*, 529 U.S. at 268, 120 S.Ct. at 1377. One of the primary justifications for not allowing uncorroborated, anonymous tips to establish probable cause is that the anonymous informant cannot be held responsible if the information is determined to be fabricated. *Id.* at 270, 120 S.Ct. at 1378. Additionally, the presence of an individual, matching the physical description given by an anonymous tip, in the area indicated by the tip is insufficient, standing alone, to establish reasonable suspicion. *Id.* at 271-72, 120 S.Ct. at 1379. However, "a tip from a known, albeit unproven, informant coupled with subsequent corroboration of the tip's details" can provide reasonable suspicion. *United States v. Kent*, 691 F.2d 1376, 1380 (11th Cir. 1982).

Because we conclude from the record that Officer Brosius had a reasonable suspicion to conduct a stop-and-frisk search of Medlock, we hold that the district court correctly denied the motion to suppress evidence.

## II.

Medlock next argues that the district court violated his Sixth Amendment rights under *Booker* by applying a two-level enhancement under § 2K2.1(b)(4) for possession of a stolen firearm based on facts not charged in the indictment or

5

proved beyond a reasonable doubt. According to Medlock, the only information a sentencing court may consider after *Booker* are facts either found by a jury beyond a reasonable doubt or admitted by the defendant. Medlock also claims that the use of extra-verdict findings to increase his sentence violated his Fifth Amendment right to due process. Medlock then asserts that his 108-month sentence is unconstitutional under *Booker* because it exceeds the 105-month guideline maximum applicable solely to the facts to which he admitted, which did not include any admission by him that the firearm was stolen. Medlock argues that the district court erred in relying on this Court's "unconstitutional interpretation of *Booker/Fanfan*" in *United States v. Rodriguez*, 398 F.3d 1291 (11th Cir.), *cert. denied*, 125 S.Ct. 2935 (2005), because the Supreme Court "in its part one holding" did not state that the Sixth Amendment was violated only if the sentence was imposed in a mandatory guideline scheme.

Because Medlock raised a timely, constitutional objection to his sentence under *Blakely* at the sentencing hearing, he is entitled to *de novo* review on appeal. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005) (holding that appellant was entitled to *de novo* review of his *Booker* claim because he raised a constitutional objection to his sentence in the district court). "We will reverse the district court only if any error was harmful." *Id.* "[C]onstitutional errors are

6

harmless where the government can show, beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence." *United States v. Phillips*, 413 F.3d 1288, 1293 (11th Cir. 2005) (quoting *United States v. Mathenia*, 409 F.3d 1289, 1291 (11th Cir. 2005)).

In *Booker*, the Supreme Court held that the Federal Sentencing Guidelines violate the Sixth Amendment right to a trial by jury to the extent that they permit a judge to increase a defendant's sentence based on facts that are neither found by the jury nor admitted by the defendant. *Booker*, 543 U.S. at ___, 125 S.Ct. at 756. To remedy this violation, the Court excised two specific provisions of the Sentencing Reform Act of 1984—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including *de novo* review of departures from the applicable guideline range)—thereby rendering the guidelines "effectively advisory." *Id.* at ___, 125 S.Ct. at 756-57. As a result, a sentencing court must still "consider Guidelines ranges," but it may "tailor the sentence in light of other statutory concerns as well." *Id.* at ___, 125 S.Ct. at 757 (citing 18 U.S.C. § 3553(a)).

In *Rodriguez*, we clarified that *Booker* error "is not that there were extra-verdict enhancements—enhancements based on facts found by the judge that

were not admitted by the defendant or established by the jury verdict—that led to an increase in the defendant's sentence. The error is that there were extra-verdict enhancements used in a mandatory guidelines system." *Rodriguez*, 398 F.3d at 1300. Thereafter, in *Shelton*, we further noted that district courts also can violate *Booker*, even in the absence of a Sixth Amendment violation, by applying the Guidelines as mandatory. *United States v. Shelton*, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

Notably, we recently rejected the exact argument raised by Medlock in this appeal, namely, that the Sixth Amendment right to a jury trial prohibits the sentencing court from making factual determinations that go beyond a defendant's admissions even when the sentencing guidelines are applied in an advisory fashion. *United States v. Chau*, ___ F.3d ___, No. 05-10640 (11th Cir. Sept. 27, 2005). In *Chau*, we stressed that "all nine [justices in *Booker*] agreed that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional." *Id.* at ___ (quoting *Rodriguez*, 398 F.3d at 1301). As such, we held that "[i]t was okay" for the district court to make additional factual findings by a preponderance of the evidence "because it applied the guidelines in an advisory way. Nothing in *Booker* is to the contrary." *Id.* at ___.

Because the district court applied the Sentencing Guidelines as advisory, we conclude that the court did not violate *Booker* by enhancing Medlock's sentence two levels under § 2K2.1(b)(4) based on extra-verdict facts found under the preponderance-of-the-evidence standard.

For the foregoing reasons, we affirm Medlock's conviction and sentence.

**AFFIRMED.**