[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-12871
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 20, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00166-CR-W-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN WEBSTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(November 20, 2008)

Before CARNES, BARKETT, and KRAVITCH, Circuit Judges.

PER CURIAM:

John Webster appeals his convictions for unlawful possession of a firearm

by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession of marijuana, in violation of 21 U.S.C. § 844(a). In particular Webster challenges the district court's denial of his motion to suppress the firearm and marijuana, which was discovered when Webster was searched after being pulled over because a police officer believed that Webster's car matched a "be on the look out" warning ("BOLO") issued earlier that day.

## I.

On March 28, 2008, the Montgomery Police Department issued a BOLO for dark-colored vehicle with something to the effect of "Down South Customs" written on the rear window, which had been allegedly involved in a shooting earlier that day. Approximately one and a half to two hours later Officer Gerald Manora saw Webster driving down Eastern Boulevard in Montgomery, Alabama. Webster was driving a blue Pontiac Grand Am with a decal on the rear window advertising his sister's business, "Down and Dirty Customs." Although Officer Manora could not recall where the earlier shooting had occurred, he believed that Webster's car matched the description in the BOLO. He began to follow Webster and called for backup to assist him in making a stop.

After following Webster for several minutes Officer Manora pulled Webster over in the Wal Mart parking lot off of Eastern Boulevard, approached the car, and

2

asked Webster for his license and proof of insurance. Officer Manora also told Webster that he had pulled him over because his vehicle matched the description of a car involved in a shooting earlier that day and asked Webster to submit to a pat-down search. Webster consented. During the search, Officer Manora found a nine-millimeter pistol in the waistband of Webster's pants. Officer Manora secured the weapon, placed Webster under arrest, and searched Webster more thoroughly, discovering marijuana in Webster's pocket.

After arresting Webster, Officer Manora radioed in to dispatch to confirm whether Webster's car was the one that had been involved in the shooting. Dispatch provided Webster with an updated BOLO description and told Manora that Webster's vehicle did not match the vehicle involved in the shooting.

Webster was indicted for possession of a handgun by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession of marijuana, in violation of 21 U.S.C. § 844(a). Webster filed a motion to suppress the handgun and marijuana, contending that Officer Manora's stop violated his Fourth Amendment rights. At the suppression hearing, Officer Manora testified that Webster had not committed any traffic violations and that he had pulled Webster over solely because he believed that Webster's car matched the description in the BOLO. Officer Manora could not recall whether the BOLO specified a particular make and model of car,

3

but he believed that the description was "a dark-colored vehicle, unknown make and model" with "something to the effect of Down South Customs" written on the rear window. He also testified that BOLOs based on witness descriptions often lead to "general lookout[s]" because witnesses are "unsure of the make and model." When the court asked Officer Manora whether he could have called in to dispatch to confirm whether Webster's car matched the BOLO, he admitted that he could have but "[i]t would have been kind of difficult on a motorcycle."

After the hearing the magistrate judge issued a report recommending that the district court deny Webster's motion to suppress and finding that Officer Manora was able to "articulate a minimal objective justification" for the search due to "the unique similarities of Webster's car to the BOLO." The district court adopted the magistrate judge's recommendation, finding that Officer Manora had been "operating on information provided by the police department to be on the look-out for 'a dark-colored vehicle, unknown make and model'" with "something to the effect of Down South Customs" on the rear window and that the similarities between that description and Webster's car justified the stop. Webster entered a conditional guilty plea to the charges, preserving the right to appeal the denial of his motion to suppress.

4

## II.

Webster contends that the initial stop of his car violated his Fourth Amendment rights because Officer Manora did not have a reasonable suspicion that Webster had been involved in the earlier shooting. "We review for clear error a district court's findings of fact on a motion to suppress" and "review de novo its application of law to those facts." United States v. Hunter, 291 F.3d 1302, 1305 (11th Cir. 2002) (citation omitted).

The Supreme Court has established that police officers may conduct warrantless investigatory searches without violating the Fourth Amendment where there is a reasonable suspicion of criminal wrongdoing. See Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1964). This includes the right to stop a moving vehicle, see United States v. Hensley, 469 U.S. 221, 226, 105 S. Ct. 675, 678, 680 (1984), and also includes investigations of past crimes. See id. at 229, 105 S. Ct. at 680. In our review of whether there was reasonable suspicion, we look at the totality of the circumstances. See United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002). Reasonable suspicion is a somewhat abstract standard that "is not readily, or even usefully, reduced to a neat set of legal rules." United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989) (internal citation and quotation marks omitted). What we do know are the bounds. Reasonable

5

suspicion demands "considerably less" than probable cause, but "the police are required to articulate some minimal, objective justification for the stop." United State v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996). That justification may be based on the information available to the officer at the time. See Arvizu, 534 U.S. at 273, 122 S. Ct. at 750–51; cf. United States v. Gonzalez, 969 F.2d 999, 1003 (11th Cir. 1992) (probable cause determination considers "whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed") (emphasis added). In forming reasonable suspicion, an officer may rely on information provided by a police bulletin to justify a Terry stop. See United States v . Hensley, 469 U.S. 221, 232, 104 S. Ct. 675, 682 (1985).

Webster contends that the BOLO description was too vague to provide a minimal, objective justification for the Terry stop because there are too many vehicles that could have matched the description. Although we agree that the BOLO description was far from a model of clarity, we do not agree that it was prohibitively vague. This is not a case where the BOLO described only the color of the vehicle. Instead, the BOLO described a dark-colored vehicle with writing on the rear window to the effect of "Down South Customs." We are convinced that such a description sufficiently narrows the field of suspected vehicles so as to

6

support reasonable suspicion for a Terry stop. Webster's attempt to distinguish the BOLO description of "Down South Customs" from his vehicle's "Down and Dirty Customs" is unpersuasive, and we conclude that the BOLO description received by Officer Manora was sufficiently similar to Webster's car to justify the Terry stop.

We must also reject Webster's argument that Officer Manora lacked an objective justification for the stop because he failed to call in to dispatch to confirm the BOLO before the stop. It is true that if Officer Manora had called in to confirm the BOLO, he would have been told that Webster's car did not match the car driven by the suspect in the shooting. Had Officer Manora done so, it may well be true that he would not have stopped Webster's car and Webster would not have been arrested. But our review of reasonable suspicion is based on the information available to the officer at the time of the stop, see Arvizu, 534 U.S. at 273, 122 S. Ct. at 750–51, and Officer Manora was not aware of the updated BOLO description when he stopped Webster. Although it might have been better for Officer Manora to call in to confirm the BOLO before stopping Webster, we cannot say that it was unreasonable for him not to do so. Under the totality of the circumstances, the similarity of Webster's car to the BOLO description provided a minimal, objective justification to establish reasonable suspicion to justify an

7

investigatory stop of Webster's car.  Thus the district court properly denied

Webster's motion to suppress.  Because the stop was legal, it follows that the

handgun and the marijuana discovered as a result of that stop were admissible.

**AFFIRMED.**