[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14988
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20300-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TAVON GRAHAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 14, 2012)

Before BARKETT,  MARTIN  and FAY, Circuit Judges.

PER CURIAM:

Tavon Graham appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), arguing that the district court erred in denying his motion to suppress firearms and ammunition evidence found on his person. According to Graham, law enforcement agents had no legal basis to either stop or frisk him after he began to walk away when they encountered him on the corner of Northwest 58 Street and Northwest 5 Court ("58th and 5th") in Miami during a drug identification sweep.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). We construe all facts related to the motion to suppress in the light most favorable to the party that prevailed before the district court—in this case the government. *Id.* Additionally, the district court, as factfinder, is entitled to substantial deference in reaching credibility determinations with respect to witness testimony. *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003).

An officer does not violate the Fourth Amendment by conducting a "brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Hunter*, 291 F.3d 1302, 1305–06 (11th Cir. 2002). When determining whether reasonable

2

suspicion exists, courts must review the "totality of the circumstances" to ascertain whether the officer had some minimal level of objective justification to suspect legal wrongdoing. *Id.* Reasonable suspicion analysis is not concerned with "hard certainties, but with probabilities," and an officer may rely on "inferences and deductions that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). A suspect's conduct might be ambiguous and susceptible of an innocent explanation, but an officer equipped with articulable suspicion is entitled to resolve that ambiguity in favor of an investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). The subjective intent of the investigating officer "does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).

Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Hunter*, 291 F.3d at 1307. Neither this Court nor the Supreme Court has adopted a *per se* rule allowing frisks attendant to narcotics stops; indeed, categorical rules are generally eschewed in the Fourth Amendment context. *United States v. Drayton*, 536 U.S.

194, 201, 122 S.Ct. 2105, 2111, 153 L.Ed.2d 242 (2002) ("[F]or the most part *per se* rules are inappropriate in the Fourth Amendment context.").

In this case, the following facts were presented through testimony at the motion hearing and credited by the district court: (1) the corner of 58th and 5th where the encounter took place is situated in a high-crime area and the police had recently received several reports of shots fired in the area; (2) the encounter took place at night; (3) Graham was one of six to ten individuals standing at the corner; (4) the immediate vicinity smelled strongly of marijuana; (5) several of Graham's associates disregarded the police officers' order to stop and fled; (6) Graham took two to three steps away from the agents and stopped only when Agent Thomas ordered him, at gunpoint, to stop; (7) Graham wore baggy pants that could conceal a weapon; (8) when his shirt was lifted as part of a general safety pat down by officers who testified they were doing so to assure their safety, a firearm was plainly visible in his rear pocket and  another firearm was felt in his front pocket. In light of these facts, we cannot say the district court erred in concluding that the stop and the ensuing pat down were justified.

**AFFIRMED.**