[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10845
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00287-SCB-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWAIN DENORRIS WALLACE,
a.k.a. Dwayne Wallace,
a.k.a. Dewayne Denorris Wallace,
a.k.a. Milton Larry Johnson,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 17, 2013)

Before PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Dwain Denorris Wallace III appeals his convictions and sentence of 120 months of imprisonment for being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e), and possessing two unregistered sawed-off shotguns, 26 U.S.C. §§ 5861(d), 5871. Wallace challenges the denial of his motion to suppress, the sufficiency of the evidence, the use of a prior conviction to impeach him, and the reasonableness of his sentence. We affirm.

The district court did not err by denying Wallace's motion to suppress. The district court ruled that officers of the Tampa Police Department had reasonable suspicion to detain Wallace and that Wallace lacked standing to challenge the seizure of one shotgun and ammunition from a vehicle which was not his and the seizure of a second shotgun that Wallace had abandoned on the street. Wallace argues that the officers lacked reasonable suspicion to detain him before the search, but the evidence supported the finding of the district court that the officers reasonably suspected that Wallace had engaged in criminal activity. The officers responded to a report of a black male driving a dark vehicle, possibly a Nissan, using a gun to threaten another person at Club Manila, which was located in a high crime area of Tampa. When the officers arrived at the club around 9:30 p.m., two or three females pointed at a black Nissan Sentra vehicle, which then sped away with its headlights off. The officers followed the Nissan onto another street and saw that the vehicle was parked partially in the road and that its driver, Wallace,

2

was kneeling by the driver's side door.  After Wallace saw the police car, he stood up, walked toward the officers, and threw a set of keys on the ground.  Based on Wallace's evasive and suspicious behavior, the officers were entitled to detain Wallace pending an investigation.  See United States v. Hunter, 291 F.3d 1302, 1305–06 (11th Cir. 2002).  Wallace argues for the first time in his reply brief that he had standing to challenge the search and seizure, but we deem this argument waived.  See United States v. Britt, 437 F.3d 1103, 1104–05 (11th Cir. 2006).

The district court also did not err by denying Wallace's motion for a judgment of acquittal.  Wallace repeats the argument he made at trial that he did not possess the firearms knowingly, but the district court correctly submitted this question to the jury.  See United States v. Jernigan, 341 F.3d 1273, 1279–80 (11th Cir. 2003).  The evidence established that, as the officers approached the Nissan, they noticed a 12-gauge sawed-off shotgun lying underneath the vehicle and adjacent to the location where Wallace had been kneeling.  On closer examination, the officers discovered that the shotgun was loaded and contained three live shells.  The officers next observed through the passenger side widow of the Nissan a 20-gauge shotgun lying between the center console and the front passenger seat.  After entering the vehicle, the officers also found in the front passenger seat a blue duffel bag containing several 12-gauge shotgun shells.  A later examination of the 20-gauge shotgun revealed that it had been fired, and the informant who had alerted

3

the police about Wallace identified the 20-gauge shotgun as the weapon that he had used to threaten another person earlier in the evening. Ample evidence proved that Wallace was in knowing possession of the firearms. See United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998). Although Wallace testified and denied knowledge of the shotguns, the jury was entitled to discredit Wallace's testimony and consider it as substantive evidence of his guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

The district court did not prejudice Wallace's substantial rights by allowing the government to impeach him using his prior conviction for attempted murder. Wallace argues that his prior conviction was inadmissible because "more than [ten] years [had] passed since [his] conviction or release from confinement," Fed. R. Evid. 609(b), but we need not resolve that argument. Even if we assume that Wallace's conviction was stale, the evidence of his guilt was overwhelming. As we explained above, the government proved that Wallace knowingly possessed two sawed-off shotguns. See 26 U.S.C. §§ 5861(d), 5871. And Wallace admitted at trial that he had been convicted previously of five felony offenses. See 18 U.S.C. §§ 922(g)(1), 924(e). We need not reverse a conviction if the evidentiary error "had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict." United States v. Hawkins, 905 F.2d

4

1489, 1493 (11th Cir.1990).  The admission of Wallace's prior conviction was harmless.

Wallace's sentence is procedurally and substantively reasonable.  The district court found that Wallace was not subject to an increase in his criminal history for being an armed career criminal and determined that Wallace, with a total offense level of 24 and a criminal history of III, had an advisory guidelines range of 73 to 78 months of imprisonment.  But after "having considered everything that was said . . . from [Wallace's attorney][] [and] from [Wallace]," the district court concluded that "an advisory guideline sentence [was not] sufficient" to account for the danger posed by Wallace's possession of "scary firearms"; his act of "pulling a firearm . . . at the residence or outside of the residence of some of the witnesses"; his possession of "two firearms in the car" with "[o]ne of them . . . loaded[] [and] one of them [having] a spent shell"; his "previous conviction for attempted murder in the second degree with a firearm"; and his inability "to stay away from firearms" or "to stay away from shooting them or waving them around."  Wallace had an extensive criminal history that included convictions for attempted murder, armed burglary of a dwelling, and possession of a firearm during the commission of a felony, and he violated the terms of his release while on probation for those offenses.  The district court reasonably determined that a variance of 42 months above the high end of Wallace's guidelines range was

5

necessary to address the "nature and circumstances of the offense, [his] history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense[,] to promote respect of the [law] and provide just punishment, to afford adequate deterren[ce][, and to] protect the public."  18 U.S.C. § 3553(a).  "We may vacate a sentence because of [a] variance only 'if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case,'" but this is not such a case.  United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (quoting United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008)).  Wallace's sentence of 120 months of imprisonment is reasonable.

We **AFFIRM** Wallace's convictions and sentence.

6