[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11225
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-00171-LGW-JEG


GEORGIA CARRY ORG., INC.,
MAHLON THEOBALD,

                                                              Plaintiffs - Appellants,

versus

BRIAN KABLER,

                                                              Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(August 29, 2014)


Before TJOFLAT, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Mahlon Theobald and Georgia Carry Org., Inc. appeal the district court's denial of their motion for summary judgment and grant of summary judgment to Brian Kabler. Appellants claimed Kabler, a deputy in the McIntosh County Sheriff's Office, violated Theobald's constitutional rights by stopping him to inquire whether he had a license to carry a firearm Kabler had previously observed in Theobald's possession. On the parties' cross-motions for summary judgment, the district court found that Kabler did not commit a constitutional violation and that, even if a constitutional violation did occur, Kabler was entitled to qualified immunity. Upon review, we conclude the district court did not err in determining that Kabler was entitled to qualified immunity and affirm.

## I.  BACKGROUND

Shortly after midnight on August 3, 2012, Theobald entered a convenience store in McIntosh County, Georgia through a side entrance while carrying a handgun in a holster on his side. The firearm was covered by a suit jacket, but as Theobald entered the store, a breeze blew the jacket open, revealing the firearm. Theobald grabbed the jacket and closed it, again concealing the firearm. Kabler and two other officers were in the convenience store at the time Theobald entered and his actions in covering it. Kabler and the officers discussed the firearm and the possibility of making contact with Theobald to determine whether he had a license to carry it.

2

Theobald conducted a transaction and left the convenience store in his vehicle. Shortly thereafter, Kabler followed him and made a traffic stop. Kabler asked to see Theobald's driver license, and after Theobald complied, Kabler asked whether Theobald had a weapon with him. Theobald asked whether he "had to answer," and when Kabler gave a generally affirmative response, Theobald told him that he had a Florida concealed weapons permit.[1] Kabler asked to see the permit, and Theobald again asked whether he was required to comply. Kabler responded affirmatively, and Theobald gave him the permit.

Kabler contacted a dispatch officer to check Theobald's driver's license and determined that it was valid. He also visually inspected Theobald's weapons permit and determined that it appeared also to be valid. Kabler then returned the documents to Theobald and told him he was free to go. At this point, Theobald asked Kabler for their location and for information concerning Kabler's identity. Kabler eventually gave Theobald the information. Kabler and Theobald briefly discussed the nature of the stop, and Kabler informed Theobald that he could ask to see Theobald's permit any time he were to see him carrying a firearm. In total, the stop lasted eight minutes and fifty seconds.

Based on these events, Appellants filed a complaint asserting, in pertinent part, a claim under 42 U.S.C. § 1983 that Kabler violated Theobald's constitutional

---

[1] Theobald's Florida concealed weapons permit was valid in Georgia.

3

rights by subjecting him to an unreasonable seizure.  Theobald sought damages against Kabler individually, and both Appellants sought declaratory and injunctive relief against Kabler in his official capacity.  Ultimately, the district court granted summary judgment in Kabler's favor and dismissed Theobald's claims.

## II.  STANDARD OF REVIEW

"We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court, and construing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party."  *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

## III.  DISCUSSION

*A.    Damages*

The underlying question in this appeal is whether Kabler had reasonable suspicion of criminal activity sufficient to overcome Theobald's Fourth Amendment right to be free from unreasonable seizures by government officials. *See United States v. Hunter*, 291 F.3d 1302, 1305-06 (11th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  However, because Kabler was a government official acting within his discretionary authority, we must view this question through the lens of the qualified-immunity doctrine, which immunizes such a government official from liability unless his conduct violates clearly-established

4

federal law.  *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

The question thus becomes whether a reasonable officer in Kabler's shoes could

have had reasonable suspicion of criminal activity.  *Jackson v. Sauls*, 206 F.3d

1156, 1166 (11th Cir. 2000); *see also Anderson v. Creighton*, 483 U.S. 635, 641

(1987) (observing that the question must be viewed objectively and that the

officer's own subjective beliefs are irrelevant).

In support of a finding of arguable reasonable suspicion, Kabler points to

several factors, none of which are disputed.  First, Kabler notes that the incident

occurred late at night at a convenience store, a combination of time and place for

which armed robberies are particularly problematic.  Kabler also notes that

Theobald entered the store through a side entrance.  Most importantly, Kabler

points to Theobald's concealment of his firearm after his jacket opened and

revealed it, arguing that Theobald's attempt to cover up his weapon in the vicinity

of the officers could indicate that his possession of the weapon was unlawful.[2]

---

[2] Theobald contends the district court made an improper inference in Kabler's favor when it stated that Theobald concealed his weapon *after* he saw the officers in the store, despite the record giving no indication of when Theobald concealed his weapon in relation to when he became aware of the officers.  However, in making this statement, the district court was not resolving when in fact the two events occurred; rather, the court was merely articulating how the events might have appeared to an officer in Kabler's position.  Without knowing with certainty whether Theobald had become aware of the officers before covering his weapon with his jacket, a reasonable officer could have nevertheless inferred a possibility that Theobald had noticed the officers prior to covering his weapon and had done so out of concern that the officers not observe it.

5

We conclude that a reasonable officer could have believed that the totality of these circumstances was sufficient to establish a reasonable suspicion justifying the ensuing traffic stop.  *See Hunter*, 291 F.3d at 1306 (stating that courts "look at the totality of the circumstances of each case" to determine whether reasonable suspicion existed (internal quotation marks omitted)).  Even though each factor is, in isolation, susceptible to an innocent explanation, taken together they create at least an arguably reasonable suspicion that Theobald was carrying his firearm illegally.  *See id.* ("[R]easonable suspicion may exist even if each fact alone is susceptible to an innocent explanation.").  Understanding that the reasonable-suspicion standard is elusive and "somewhat abstract," *United States v. Arvizu*, 534 U.S. 266, 274 (2002), we cannot say that no reasonable officer in Kabler's shoes would have believed that reasonable suspicion existed under these circumstances.

B.    *Declaratory & Prospective Injunctive Relief*[3]

Appellants also sought declaratory and prospective injunctive relief specifically relating to Kabler's statement that he could require Theobald to show

---

Similarly, it is of no consequence what actually motivated Theobald to pull his jacket over his weapon because the question is how his behavior would have appeared to a reasonable officer under the circumstances.

[3] The district court did not separately discuss these claims but dismissed them following its order on the parties' cross-motions for summary judgment.  The district court's lack of discussion of these claims is of no moment, however, because we resolve them on the basis of standing, an issue we consider de novo and may raise sua sponte.  *AT&T Mobility, LLC v. NASCAR, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007).

6

him his weapons permit any time he were to see Theobald carrying a weapon. Theobald asked the district court to declare that requiring him to produce a weapons permit in this way would violate his constitutional rights and to enjoin Kabler from doing so. As Appellants point out, however, subsequently to the events underlying this appeal, the Georgia Assembly passed a bill, effective July 1, 2014, that prohibits law-enforcement officers from detaining a person carrying a weapon solely to determine whether the person is carrying a weapons permit. *See* O.C.G.A. § 16-11-137(b). For this reason, Appellants cannot demonstrate the "substantial likelihood that [they] will suffer injury in the future" necessary to establish their standing to assert these claims. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999). Even if Kabler's statements made it likely he would require Theobald to produce a weapons permit solely because he had seen Theobald with a firearm, there is no reason to believe this likelihood persists after the enactment of § 16-11-137(b). Thus, we conclude those claims must fail for lack of standing.

### III.  CONCLUSION

In light of the foregoing, we conclude that the district court did not err in finding Kabler entitled to qualified immunity on Theobald's § 1983 claim, and we further conclude that Appellants lack standing to assert their claims for declaratory judgment and prospective injunctive relief.

7

**AFFIRMED.**

8