[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12315
Non-Argument Calendar
_____

D.C. Docket No. 3:19-cr-00150-TKW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM KEITH WATSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 27, 2021)

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

William Keith Watson appeals his conviction for possessing a firearm and ammunition as a convicted felon. Watson argues that the district court erred in denying his motion to suppress the firearm and ammunition because the seizure was "the fruit of an illegal detention, frisk, and arrest." We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In July 2019, a bystander called 911 and reported that she watched a man "push a female out of [a] vehicle" by a gas station and the man was now "going up in [the female's] face and yelling." Deputies Dalton Tifft and Matthew Levier of the Santa Rosa County, Florida Sheriff's Office responded to the scene. Deputy Tifft arrived first and spoke with the female, Brittany Smith. Two minutes later, Deputy Levier arrived and spoke to Watson "for a brief moment" before Watson started walking towards the gas station "to go to the bathroom." Both deputies asked Watson to return to the back of his car, which he did.

While Watson was standing near the back of his car, Deputy Levier noticed a bulge in Watson's pocket and frisked him for weapons. When Deputy Levier squeezed the object, Watson slapped the deputy's hand, resulting in Watson's arrest for battery on a law enforcement officer. Deputy Levier searched Watson's pocket and found a cigarette box containing methamphetamine, heroine, and cigarettes.

2

Deputy Levier and a third deputy on scene then attempted to place Watson in a squad car, but Watson "went limp," made the deputies carry him, and then headbutted the third deputy.

After Watson was placed in the squad car, Deputy Levier and Deputy Tifft looked into Watson's open car window and saw a gun sticking out from between the driver's seat and the center console. Deputy Levier seized the gun, which was loaded. Because the car was unregistered, it was towed away from the gas station and impounded.

A few months later, a grand jury indicted Watson for possessing the firearm and ammunition found in his car, knowing that he had been previously convicted of multiple felonies, in violation of 18 U.S.C. sections 922(g)(1) and 924(a)(2).

Watson filed a motion to suppress the firearm and ammunition, arguing that "the seizure was the fruit of an illegal detention, frisk[,] and resulting arrest" because Deputy Levier did not have reasonable suspicion to frisk him for weapons, acted in bad faith, and Watson had the right to resist arrest by "knocking" Deputy Levier's hand away. The government responded that (1) the deputies had reasonable suspicion to detain Watson; (2) the totality of the circumstances justified the frisk; (3) "the seizure of the firearm [was] justified both as a search made pursuant to probable cause and the automobile exception to the warrant requirement as well as a search incident to arrest"; and (4) the firearm and ammunition would have been

3

inevitably discovered because the car was unregistered and had to be searched before it was towed.

The district court held a hearing on Watson's motion, at which Deputy Tifft, Deputy Levier, Watson, and Ms. Smith all testified. The government also introduced the 911 call history report into evidence. The district court denied the motion, explaining that it focused on the "original detention" because there was "no dispute that the search that discovered the gun was a lawful search if the original detention was lawful." The district court found that "the officers here were able to articulate a reasonable suspicion that a crime had been committed, i.e., some sort of domestic dispute," because "[t]he call that they received reported, in effect, a domestic dispute." The district court also found that because the deputies responded to a "potential domestic incident," and Deputy Levier saw a bulge and Watson was animated, there was reasonable suspicion to frisk Watson. And because Deputy Levier "was battered" while frisking Watson, there was probable cause to arrest Watson, and "from that point forward . . . there [was] really no dispute that the discovery of the gun was lawful." The district court found the deputies' testimony to be "more credible" than Watson's and "accepted" their "version of events."

Watson pleaded guilty and reserved his right to appeal the denial of his motion to suppress. The district court sentenced Watson to sixty-three months' imprisonment, to be followed by three years of supervised release.

## STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, we review factual determinations for clear error and the application of the law to those facts de novo. United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011). When considering a ruling on a suppression motion, we construe all facts in the light most favorable to the prevailing party below. Id. We afford substantial deference to the district court's credibility determinations. United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012).

## DISCUSSION

Watson argues that the gun and ammunition seized from his car must be suppressed because the seizure was "the fruit of an illegal detention, frisk, and arrest." Watson concedes that if the detention, frisk, and arrest were lawful, so was the seizure of his gun and ammunition.

The Fourth Amendment guarantees the right against unreasonable searches and seizures. U.S. Const. amend. IV. But "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). "[W]e look to the totality of the circumstances to determine the existence of reasonable suspicion." Jordan, 635 F.3d at 1186. Our task is "to see whether the detaining officer has a particularized and objective basis

for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 266 (2002) (quotation marks omitted). In forming reasonable suspicion, officers may "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available." Id.

Deputy Levier had reasonable suspicion to detain Watson. Before arriving on scene, Deputy Levier knew that a bystander had reported to the 911 operator that a white man wearing a gray shirt and khaki shorts pushed a woman out of a car. The push, if it happened, was a battery. When Deputy Levier arrived on scene, he saw Watson, a white man wearing a gray shirt and khaki shorts, "pacing" and acting "very fidgety, like he was on some kind of narcotics." When Deputy Levier approached Watson, Watson "kept looking around" like "he was possibly looking for a way to run and flee from the situation." The 911 report and Watson's behavior gave Deputy Levier reasonable suspicion to detain Watson and investigate the reported battery. See United States v. Bruce, 977 F.3d 1112, 1117 (11th Cir. 2020) ("For purposes of a brief investigatory detention" a "911 call giving eyewitness details of a real-time event is reliable enough to credit the caller's account." (quotation marks omitted)); Wardlow, 528 U.S. at 119 ("Nervous, evasive behavior is another pertinent factor in determining reasonable suspicion.").

After the investigatory stop, Deputy Levier lawfully frisked Watson. "Once an officer has legitimately stopped an individual, the officer can frisk the individual

so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002). While talking to Watson, Deputy Levier "observed a large bulge in his right pocket." Because of the bulge and Watson's "erratic behavior and appearing to want to get out of there," Deputy Levier "felt like [Watson] possibly could be armed" and told Watson he "was going to pat him down" to "make sure he had no weapons on him." Watson said that Deputy Tifft had already frisked him, but Deputy Tifft said that was not true. At that point, Deputy Levier knew that Watson fit the description of a man who the deputy had reason to believe committed a battery, was acting nervous and "fidgety," had a "large bulge" in his pocket, and lied to try to avoid being frisked. That gave Deputy Levier reason to fear for his safety and frisk Watson. See Jordan, 635 F.3d at 1187 (concluding officer could frisk suspect for concealed weapons where suspect was acting "suspiciously defensive" and the officer observed a bulge in suspect's pocket); Hunter, 291 F.3d at 1306 (concluding officer could frisk suspect for concealed weapons where the officer observed "the presence of a visible, suspicious bulge").

After he began the pat down, Deputy Levier had probable cause to arrest Watson for battery on a law enforcement officer. When Deputy Levier frisked Watson's pocket, Watson "slapped" the deputy's hand. Watson argues that he was justified in using force to resist the frisk because "[r]easonable suspicion was so

lacking that Levier could not have been acting in good faith." But, as we already discussed, Deputy Levier had reasonable suspicion to detain and frisk Watson. Therefore, Watson did not have the right to strike Deputy Levier, and when he did, he committed battery on a law enforcement officer, giving Deputy Levier probable cause to arrest him. See Fla. Stat. § 784.03(1)(a)1 ("The offense of battery occurs when a person . . . [a]ctually and intentionally touches or strikes another person against the will of the other."); Fla. Stat. § 784.07(2)(b) ("[K]nowingly committing a[] . . . battery upon a law enforcement officer" is "a felony of the third degree.").

Because Watson was lawfully detained, frisked, and arrested, and he conceded that the search and seizure of the firearm and ammunition were lawful if the stop, pat down, and arrest were lawful, the district court did not err in denying his motion to suppress the gun seized from his car after his arrest.

**AFFIRMED.**

8