**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lewis FRANKLIN, Defendant–
Appellant.**

No. 01–15562.

United States Court of Appeals,
Eleventh Circuit.

March 12, 2003.

Bernardo Lopez and Robert N. Berube, Fed. Pub. Defenders, Brenda G. Byrn (Court–Appointed), Fort Lauderdale, FL, Dave Lee Brannon, Fed. Pub. Def., West Palm Beach, FL, Kathleen M. Williams, Fed. Pub. Def., Miami, FL, for Defendant–Appellant.

Randy Alan Hummel, U.S. Atty., Anne R. Schultz, Lisette M. Reid, Miami, FL, for Plaintiff–Appellee.

Before EDMONDSON, Chief Judge, ANDERSON, Circuit Judge, and POGUE*, Judge.

EDMONDSON, Chief Judge:

This case is about flight and an investigatory stop.

Louis Franklin entered a conditional guilty plea to possession with the intent to distribute crack cocaine in violation of 21 U.S.C. 841(a)(1). On appeal, he challenges the district court's denial of his motion to suppress, as the fruits of an unlawful seizure, his statements and drugs found on his person and drugs found at the scene of his seizure.[1] We affirm.

---

* Honorable Donald C. Pogue, Judge, United States Court of International Trade, sitting by designation.

1. Franklin also claims the district court abused its discretion when it accepted the testimony from the suppression hearing as the factual basis for his plea. He claims that he, at the suppression hearing, never admitted to the charged conduct or the facts as presented at the hearing. Because Franklin failed to object at the plea colloquy, we review this issue only for plain error. *See United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 1048, 152 L.Ed.2d 90 (2002). Franklin's claim is not supported by the record. At the plea colloquy (which took place immediately after the sup-

## BACKGROUND

When reviewing a district court's decision on a motion to suppress, we must view the facts in the light most favorable to the prevailing party: in this case, the government. *See United States v. Baron–Mantilla,* 743 F.2d 868, 870 (11th Cir. 1984). Keeping this point of view firmly in mind, these circumstances constitute the material facts.

The Riviera Beach Police Department Special Response Team (SRT)—a Special Weapons and Tactics (SWAT) team—was patrolling the "problem areas" of the city for drinking, loitering, drug-trafficking, trespassing and crowd control. The team traveled in a two-vehicle caravan: a marked van followed by a sport utility vehicle.[2] The team members were dressed in their SRT uniforms including body armor, boots, fatigues and side arms.

At approximately 10:15 p.m., the team noticed Franklin. He was standing, by himself, underneath a "no loitering" sign in front of a Chinese take-out restaurant. The officers decided to ask Franklin what he was doing. They pulled up in front of Franklin and stopped. The officers began to step out of the van.

As soon as he saw the officers, Franklin ran away. Two of the SRT officers, Detective Newton and Officer Mammino, gave chase. Franklin ran around the side of the building and climbed a chain link fence. After climbing the fence, he ran diagonally across a parking lot and began to scale a second fence. Detective Newton caught Franklin as he was attempting to climb the second fence.

As Franklin was struggling with Detective Newton, Franklin attempted to reach for something in his waistband. Newton thought it might be a weapon. Officer Mammino arrived and helped Newton secure Franklin, handcuff him, and move him to a lighted area. The officers asked Franklin why he had run. He said that he had an outstanding arrest warrant. Officer Mammino searched Franklin and found two bags of marijuana and a pill bottle containing 18.5 grams of crack cocaine. Detective Newton searched the area around the second fence; he found Franklin's hat and 106 small zipped plastic bags containing a white powder which tested positive for cocaine.

Franklin filed a motion to suppress which the district court denied without expressly making factual findings. After the district court announced its decision, Franklin's lawyer informed the court of Franklin's intention to plead guilty. Franklin entered a conditional guilty plea.

## DISCUSSION

Franklin argues the district court erred when it denied his motion to suppress. He claims the police officers lacked reasonable suspicion to stop him and, therefore, his statements and the drugs found both at the scene and on his person are inadmissible.[3]

---

pression hearing), Franklin told the court that he understood the charges, admitted he was guilty and said he had no questions. We see no error (plain or otherwise) in the district court's acceptance of Franklin's plea.

2. No evidence in this record supports the idea—and never has Franklin contended—that under the circumstances, for example the lighting, it was difficult to read the "police" markings on the side of the marked vehicle. The area was lighted by both street lights and the lights coming from the restaurant.

3. At oral argument, Franklin argued that— even if reasonable suspicion justified the stop—the evidence should be suppressed because the officers lacked probable cause to arrest him. This argument is not mentioned in Franklin's brief, in his argument at the suppression hearing, or in his motion to suppress. "As a general rule, an appellate court will not consider a legal issue or theory raised for the first time on appeal." *Formby v. Farmers and Merchs. Bank,* 904 F.2d 627, 634 (11th Cir.1990) (citation omitted). Furthermore, an appellant must "state and address

A denial of a motion to suppress presents mixed questions of law and fact. *United States v. Harris,* 928 F.2d 1113, 1115–16 (11th Cir.1991). The district court's application of the law to the facts is reviewed de novo. *United States v. Gonzalez,* 71 F.3d 819, 824 (11th Cir.1996).

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The reasonableness of a seizure is determined using "all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985).

That a police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot" is well settled. *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000). Reasonable suspicion is a less demanding standard than probable cause, but requires "at least a minimal level of objective justification for making the stop." *Wardlow,* 120 S.Ct. at 676. To determine whether reasonable suspicion exists, we look to see whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate[.]" *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

When the officers approached Franklin, he was in a "problem area," at night, standing under a "no loitering" sign. We will assume the SRT officers, at this point, lacked reasonable suspicion. The officers, however, could still approach Franklin and speak to him. "[N]ot every encounter be-tween a police officer and a citizen is an intrusion requiring an objective justification." *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980)(opinion of Stewart J.). "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry,* 88 S.Ct. at 1886 (White J. concurring).

A seizure under the Fourth Amendment occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* at 1879 n. 16. Franklin was seized, as defined by the Fourth Amendment, when Detective Newton caught and tackled him at the second fence. *See California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 1550–52, 113 L.Ed.2d 690 (1991) (a person can be seized through a show of authority only if he yields to the authority; if the person flees, he is seized only when he is caught).

Because Franklin was seized when he was tackled, the officers can consider everything that happened up to that point to establish reasonable suspicion. *See Terry,* 88 S.Ct. at 1880; *see also Hodari D.,* 111 S.Ct. at 1549 ("In addition, of course, Pertoso's seeing the rock of cocaine, at least if he recognized it as such, would provide reasonable suspicion for the unquestioned seizure that occurred when he tackled Hodari."). The facts include Franklin's presence in a problem area, at night, underneath a no loitering sign, and his flight from the officers. The facts are sufficient to establish reasonable suspicion.

Franklin's flight is of particular importance to our decision. The Supreme Court has said flight is a relevant consideration for a finding of reasonable suspicion. *Wardlow,* 120 S.Ct. at 676. Our cases

argument to the issues the appellant desires to have reviewed by this Court in the appellant's initial brief." *Adler v. Duval County*

*School Bd.,* 112 F.3d 1475, 1481 (11th Cir. 1997). This issue is waived.

agree that flight is an appropriate consideration. *See United States v. Gordon,* 231 F.3d 750, 756 (11th Cir.2000)("It is the powerful evidence of flight that drives the district court's findings and dictates the outcome of this appeal."); *United States v. Hunter,* 291 F.3d 1302, 1306 (11th Cir. 2002). While flight is not proof of wrongdoing, it is indicative of such. *Wardlow,* 120 S.Ct. at 676. Innocent persons might run from police officers; but flight creates an ambiguity; and the officers may stop the person to resolve the ambiguity. *Id.* at 677.

Franklin's flight was particularly suspicious because of its nature and its duration. He ran away at full speed as soon as he saw the officers. He did not turn and start to walk away. He did not act like he was going about his business. Instead he took off in "headlong" flight. While any kind of flight, even walking away, might support a finding of reasonable suspicion, see *Gordon,* 231 F.3d at 757; *Hunter,* 291 F.3d at 1306, "[h]eadlong flight—wherever it occurs—is the consummate act of evasion." *Wardlow,* 120 S.Ct. at 676.

The duration of Franklin's flight is also significant. He ran behind the building, climbed a fence, sprinted across a parking lot and began to scale a second fence. While initially his flight might have indicated that he was just trying to remove himself from a potentially dangerous situation (although, under *Wardlow,* this flight would still have created an ambiguous situation which the officers could have investigated), at some point between when he cleared the first fence and started to scale the second, his flight more clearly indicated his potential involvement in wrongdoing and his desire to evade the police. We believe this flight—combined with the other factors—gave the officers reasonable suspicion to stop Franklin.

██ Franklin argues that his flight cannot be considered because it was provoked by the SRT's "unreasonable show of force." We accept that officers cannot improperly provoke—for example, by fraud—a person into fleeing and use the flight to justify a stop. *Cf. Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963) ("A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked."; case involving forcible entry into living quarters); [4] *Marshall ex rel. Gossens v. Teske,* 284 F.3d 765, 770-71 (7th Cir.2002)(deciding that presence in a high crime area accompanied by improperly provoked flight is not sufficient to support probable cause for arrest, but expressing, in dicta, uncertainty about existence of reasonable suspicion for a stop: Compare "it's doubtful that the officers had even reasonable suspicion to stop Marshall" with "if a search of Marshall had turned up a gun or drugs, he would not only not have a viable § 1983 civil claim, he would have had a date to appear in juvenile court on a delinquency charge."). We believe Franklin's flight—fast and far—was not provoked improperly. We must ask whether a reasonable and innocent person facing this situation would have been caused to flee in the same manner as Franklin.[5] Taking the facts in

---

**4.** Our focus must be on improper provocation. Franklin's flight was undoubtedly provoked in some sense—that is, brought about—by the presence of the police. But, in this sense, the flight in *Wardlow, Gordon* and *Hunter* would have been provoked as well. If the officers' provoking conduct was improper—like the fraud leading to the forced entry in *Wong Sun*—the provoked flight might be tainted by this conduct.

**5.** We say "reasonable and innocent person" because—in cases such as this one—we recognize that guilty and innocent persons might have different reactions to the presence of police officers. *See Florida v. Bostick,* 501

the light most favorable to the government, as we must, we believe a reasonable person would not have fled in this dramatic manner.

The officers approached in a clearly marked police van. They were wearing SRT uniforms, including boots and body armor. While these uniforms are distinctive, they are recognized as police uniforms. The officers wore sidearms, like most police officers; but they never drew them. The van pulled up and came to a normal stop. The door opened, and the officers began to step out.

While we recognize that a SWAT team can sometimes be intimidating, nothing was extraordinary about how the team arrived. A reasonable person could have believed the team was arriving to place an order at the Chinese restaurant. While a reasonable person might have believed the team's arrival indicated some imminent violence (a possibility, we suppose, when a SWAT team is involved), we cannot say a reasonable person would have reacted like Franklin. A reasonable person might have dropped to the ground. A reasonable person might have moved away from the building. But Franklin's flight went further, he continued to flee vigorously after

he had removed himself from the immediate area, that is, from what might have been reasonably perceived ·as the zone of danger. His sustained flight suggested it was from the law instead of from a perceived place of danger.

Because we conclude the facts here would not have caused a reasonable person to flee like Franklin, we cannot say this flight was wrongfully provoked. So, his flight can, under *Wardlow*, be considered to support reasonable suspicion. Considering Franklin's flight (including its "headlong" nature and its duration), and his presence in a "problem area," at night, directly underneath a "no loitering" sign,[6] the officers had reasonable suspicion to conduct a brief investigatory stop.

We AFFIRM the denial of Franklin's motion to suppress and the acceptance of the guilty plea.

AFFIRMED.

POGUE, Judge, dissenting:

The crucial question in this case is whether Franklin's flight was provoked by the police themselves. As this Court stated in *Gordon*, "the [Supreme] Court made clear that the key question in this context

---

U.S. 429, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)(rejecting argument that no reasonable person would consent to search of bag that he knew contained drugs: " 'reasonable person' test presupposes an *innocent* person")(emphasis in original). We are concerned about how the officers' acts would be viewed by a person whose freedom was not much jeopardized by contact with the police.

6. Franklin also argues that no case has ever said that flight alone can create reasonable suspicion. Whether flight alone can support reasonable suspicion is an issue we do not need to address. This case involves more than flight. That Franklin was standing underneath a "no loitering" sign in a "problem area" counts. Florida's anti-loitering statute provides that it is "unlawful for any person to loiter or prowl in a place, at a time or in a

manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." Fla. Stat. Ann. § 856.021 (2000). In addition the statute lists flight "upon appearance of a law enforcement officer" as one of the "circumstances which may be considered in determining whether such alarm or immediate concern is warranted." Fla. Stat. Ann. § 856.021(2). In the district court Franklin did not contest that the pertinent location was a problem area with a high number of calls for the police from the area. "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 120 S.Ct. at 676.

is whether the flight is unprovoked." 231 F.3d at 757. As the facts here, even viewed in the light most favorable to the government, do not support such a conclusion, I respectfully dissent.

The majority assumes, and I agree, that absent Franklin's flight, there were insufficient particularized indications of wrongdoing to justify reasonable suspicion. Franklin was standing on the street, perhaps with other people, in front of an open restaurant at which he may have ordered food, and across the street from an open bar. A government witness testified that Franklin was standing in a "problem" area, but mere presence in a high-crime area, "standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Wardlow*, 528 U.S. at 124; *see also Gordon*, 231 F.3d at 756 ("Gordon and his co-Defendants were sighted standing, at night, within ten feet of a parked car, surrounded by largely abandoned buildings, in an area notorious for violent crime and drug trafficking. Standing alone, these facts would not have justified this stop.").

While Franklin was standing underneath a no-loitering sign, Florida's anti-loitering statute requires that (1) an individual must be loitering or prowling at a place or time, or in a manner that is unusual for law-abiding citizens, and (2) the loitering or prowling must be under circumstances that warrant a reasonable fear for the safety of persons or property in the vicinity. Fla. Stat. § 856.021(1).[1] Franklin's behavior at the time of the incident did not meet these requirements. Police did not know of Franklin's outstanding arrests and were not searching for him; moreover, they did not observe him engage in any suspicious behavior.

It is undisputed that the police arrived in full SRT gear, including military fatigues, body armor, boots and sidearms. Although the police vehicle was clearly identified with the words "Rivera Beach Police" painted on its side, it was 10:15 p.m. and the area was lit only by street lights and the light from the restaurant. Additionally, two witnesses testified that the vehicle pulled up rapidly and that the doors were already opening and officers were exiting the vehicle while it was still moving. I do not believe that the circumstances here—a restaurant located in a high-crime area, the sight of a car pulling up and armed men in military-type gear—

---

1. Florida's loitering statute, Fla. Stat. § 856.021, provides as follows:

    Loitering or prowling; penalty.
    (1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
    (2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it im-

    practicable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
    (3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

provide a basis for the conclusion that Franklin's flight was unprovoked.

Under *Illinois v. Wardlow,* "unprovoked flight" may form the basis for reasonable suspicion and therefore for an investigative stop. 528 U.S. at 124–25. Where an individual's flight is provoked, however, it cannot support reasonable suspicion. The police may not frighten an individual into fleeing, and then assert his flight as a justification for pursuing and stopping him.

The Seventh Circuit has already come to this conclusion in *Marshall v. Teske,* 284 F.3d 765, 770–71 (7th Cir.2002), holding that where an individual's flight was provoked by the police, the flight could not support reasonable suspicion. In *Marshall,* a teenage boy who was on the street in an area known for drug activity fled upon seeing three masked men with guns coming towards him. The three men were actually police officers executing a search warrant, but testimony indicated that their identifying police insignia were not visible. After Marshall fled, the officers arrested him. There was no evidence either prior to or after Marshall's flight that he was involved in any wrongdoing. The court stated, "it's doubtful that the officers had even reasonable suspicion to stop Marshall, given that his flight was not 'unprovoked.' Marshall did what any sane person would do if he saw masked men with guns running toward him: he ran...." *Marshall v. Teske,* 284 F.3d at 771.

The fact that Franklin's flight was "fast and far" does not distinguish this case from *Marshall.* On the contrary, the speed and distance of Franklin's flight support a determination that he, like Marshall simply ran away from an intimidating situation.

As Justice Stevens observed in *Wardlow,*

> a reasonable person may conclude that an officer's sudden appearance indicates nearby criminal activity. And where there is criminal activity there is also a substantial element of danger—either from the criminal or from a confrontation between the criminal and the police. These considerations can lead to an innocent and understandable desire to quit the vicinity with all speed. Among some citizens, particularly minorities and those residing in high crime areas, there is also the possibility that the fleeing person is entirely innocent, but, with or without justification, believes that contact with the police can itself be dangerous, apart from any criminal activity associated with the officer's sudden presence.

*Wardlow,* 528 U.S. at 131–32 (Stevens, J., joined by Ginsburg, Breyer, & Souter, JJ., concurring in part and dissenting in part). Certainly Justice Steven's caveat must be all the more relevant when the police act in military gear.

For the foregoing reasons, I would reverse the district court's decision to deny Franklin's motion to suppress the evidence against him.