BARKETT, Circuit Judge,
specially concurring:
I join the majority opinion in full, but write separately because I also believe that Officer Valdes’s initial detention of Jessup and Casebeer was unlawful. Officer Valdes only relied on two facts to order Jessup and Casebeer to the ground at gunpoint: (1) the time — it was 2:45 a.m.; and (2) the location — Jessup and Casebeer *695 were outside, in a yard that was just down the street from the house where the basketball was reported missing.[1] The Supreme Court, this Court, and the Florida Supreme Court have all held that such sparse facts do not give rise to the requisite reasonable suspicion needed to justify a Terry stop.
The Supreme Court has unequivocally stated that “[a]n individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Similarly, we have held that a defendant’s presence in an area known for crime, even at night, is not sufficient in itself to establish reasonable suspicion. United States v. Gordon, 231 F.3d 750, 756 (11th Cir.2000) (concluding that, had the defendants merely been “sighted standing, at night, within ten feet of a parked car, surrounded by largely abandoned buildings, a Terry stop would not have been justified”).[2]
Likewise, in Levin v. State, the Florida Supreme Court held that the following facts were “patently insufficient” to create reasonable suspicion to support a Terry stop: the defendant “was walking along the public street at 3:00 or 3:30 a.m. in a ‘high class’ residential area with a companion ... and [ ] there had been prior residential burglaries committed in the area.” 449 So.2d 288, 288 (Fla.Dist.Ct.App.1983), adopted by State v. Levin, 452 So.2d 562 (Fla.1984). Further, in Popple v. State, the Florida Supreme Court held that no reasonable suspicion existed for an officer, who was investigating an abandoned stolen car, to stop the occupants of a car that was sitting nearby in a desolate area. 626 So.2d 185, 186 (Fla.1993). And in Mullins v. State, the Florida Supreme Court held that riding a bicycle slowly through a residential area in the very early morning hours was “clearly insufficient to give rise to anything more than a bare suspicion of illegal activity.” 366 So.2d 1162, 1163 (Fla.1978).[3]
*696 Here, there is no evidence that either Jessup or Casebeer exhibited any behavior or actions that could even arguably be classified as suspicious. They were simply standing in the side yard of a private residence. And when Officer Valdes ordered them to step forward, they immediately and without incident complied. Relying on Jessup and Casebeer’s presence near the complainant’s house and the time of night to justify a Terry stop is no different than relying on an individual’s presence in a high crime area at night to justify a stop. Accordingly, based on the summary judgment evidence viewed in the light most favorable to Jessup, I believe that Officer Valdes’s Terry stop of Jessup and Casebeer was unlawful.
This is not to suggest that Officer Valdes was required to ignore Jessup and Casebeer, or that he was prohibited from investigating whether Jessup and Case-beer had stolen the basketball. It would have been perfectly lawful for him to pursue a consensual citizen encounter, such as approaching Jessup and Casebeer, identifying himself as a police officer, and asking them questions about the stolen basketball in a non-coercive manner. See United States v. Espinosa-Guerra, 805 F.2d 1502, 1507 (11th Cir.1986). But we have surely not reached the point in this country where people cannot relax in their yards at night without the fear of being seized at gunpoint just because someone down the street thinks that his basketball is missing. To invade a person’s “inestimable right of personal security” in such a profound way, Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), reasonable suspicion is required. “Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result [the Supreme Court] has consistently refused to sanction.” Id. at 22, 88 S.Ct. 1868.

. No evidence indicates that Valdes saw the basketball before ordering Jessup and Case-beer out of the yard and to the ground.

. Something more than a defendant's suspicious presence in an area has always been required by the Supreme Court and our Circuit for a lawful Terry stop. See Wardlow, 528 U.S. at 124, 120 S.Ct. 673. For example, the Supreme Court has “recognized that nervous, evasive behavior is another pertinent factor in determining reasonable suspicion,” with unprovoked headlong flight being the "consummate act of evasion.” Id. Likewise, we have found that a defendant’s evasive behavior, including his flight from law enforcement, is an additional factor that gives rise to reasonable suspicion. See United States v. Jordan, 635 F.3d 1181, 1187 (11th Cir.2011) (explaining that defendant’s presence in an area known for crime, his belligerent attitude, bulge in his pocket and his flight from the law enforcement officers together supported the conclusion that the officers had reasonable suspicion to conduct a Terry stop); United States v. Franklin, 323 F.3d 1298, 1301-03 (11th Cir.2003) (defendant’s flight was particularly suspicious because of its nature and duration); United States v. Hunter, 291 F.3d 1302, 1306-07 (11th Cir.2002) (finding reasonable suspicion for a Terry stop where individual was in a high-crime area, observing an illegal gambling dice game, had a noticeable bulge in his pocket, and walked quickly away when officers approached the area).

.See also Coladonato v. State, 348 So.2d 326, 327 (Fla.1977) (no reasonable suspicion for stopping a van merely because “it was an unusual vehicle to be in the area at that time of night”); M.R. v. State, 34 So.3d 143, 144-45 (Fla.Dist.Ct.App.2010) (no reasonable suspicion when defendant’s conduct "consisted only of walking down the street in a 'high prostitution area' at 9:30 in the evening”); Kell v. State, 559 So.2d 731, 731 (Fla.Dist.Ct.App.1990) (”[T]he mere fact that the appellant was present in a high crime area, which happened to be where he lived, at nighttime, without more, such as suspicious conduct or *696 unusual circumstances ... does not warrant an investigatory stop.”); McCloud v. State, 491 So.2d 1164, 1167 (Fla.Dist.Ct.App.1986) (no reasonable suspicion to support a stop based "merely upon the ‘time’ of day and the 'location' of the appellant’s car”).