PER CURIAM.
The State of Florida appeals a circuit court order granting defendant Adrian Law’s motion to suppress a firearm. We reverse.

Background

On April 5, 2011, Detectives W and P[1] responded to a crime stoppers narcotics tip. The detectives began surveillance while remaining in their vehicle across the street from the reported address, which was in an area known for drug activity. The detectives observed an individual other than the defendant engage in a hand-to-hand transaction in the parking lot of the apartments. The detectives then observed a group of individuals in the parking lot smoking what they believed to be marijuana.
Detective W watched the defendant emerge from around one of the buildings and engage in a short conversation with the individual observed in the earlier hand-to-hand transaction. The defendant then patted his pockets, put his finger up in the air, and left the parking lot the same way he came. The detectives continued to watch the individuals smoking and saw some of them begin to walk eastbound. Detective W then called for a takedown of those individuals walking away.
The defendant reemerged with money in his hand and approached the group of individuals remaining in the parking lot. Upon seeing the takedown, however, the defendant appeared frightened and nervous and immediately grabbed the waistband of his shorts, turned around, and started speed walking toward the west side of the building where he came from. Detective W called for a takedown unit to make contact with the defendant as he was walking away.
Detective A and his partner, Detective R, responded to the call. Upon finding the defendant, Detective A exited his vehicle. Detective A attempted to stop the defendant by saying, “[H]ey, police, come here, man what are you doing?” Detective A did not draw his gun in that encounter. The defendant faced Detective A, said “I’m straight,” or “I’m good, I’m good,” but walked backward and in the same direction (away from Detective A). Detective A advanced toward the defendant who then turned around, reached for the waistband of his shorts, and started running.
Detective A gave chase, yelling loudly, “[S]top, police, stop running.” Detective A caught up with the defendant at the doorway of an apartment. The defendant tried to get inside the apartment, but the doorway was blocked. The defendant tried to pull himself through, and at that point a silver object hit the door frame and bounced outside of the apartment. Detective A saw that the object was a firearm. The defendant and Detective A then engaged in a physical struggle after which Detective A arrested the defendant and retrieved the firearm.
The defendant filed a motion to suppress contending that his “provoked flight” was *613 insufficient to establish reasonable suspicion. The circuit court granted the motion, and the State appealed.

Analysis

While the trial court’s findings must be affirmed if supported by competent, substantial evidence, we review de novo the court’s application of the law to those facts. E.g., Jackson v. State, 18 So.3d 1016, 1027 (Fla.2009).
The Supreme Court, in Illinois v. Wardlow, 528 U.S. 119, 124-26, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), held that a defendant’s “unprovoked flight upon noticing police” in a high-crime area was suggestive of wrongdoing and therefore provided reasonable suspicion justifying an investigatory detention. “Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.” Id. at 124, 120 S.Ct. 673. In C.E.L. v. State, 24 So.3d 1181 (Fla.2009), the Florida Supreme Court found that even if an officer initially lacks reasonable suspicion to stop a defendant, reasonable suspicion can be established by a defendant’s flight in a high-crime area.
In the present case, the defendant does not contest that his arrest occurred in a high-crime area.[2] The issue is whether the defendant’s flight was provoked or unprovoked, and whether his flight established reasonable suspicion such that the motion to suppress should have been denied.
A person is seized through a show of authority only if he yields to the authority; however, if the person flees, he is seized only when he is caught. California v. Hodari D., 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Here, the defendant was seized when the physical altercation occurred at the apartment, and not when Detective A first approached him. Accordingly, “the officers can consider everything that happened up to that point to establish reasonable suspicion.” See United States v. Franklin, 323 F.3d 1298, 1301 (11th Cir.2003). The significant facts include the defendant’s presence in a high-crime area, the observation of the defendant’s interaction with the same individual that had conducted a hand-to-hand transaction, the defendant’s return with money in his hand, the defendant’s reaction to observing the takedown, the defendant’s grabbing of his waistband and walking away from the scene, and the defendant’s flight upon being approached by Detective A.
While the defendant argues that his flight was provoked, this is not a case where there is competent, substantial evidence of an “unreasonable show of force” or improper provocation. See, e.g., id. at 1302-03; cf. Rhoden v. State, 941 So.2d 5 (Fla. 2d DCA 2006) (finding that the defendant’s flight was provoked because the defendant’s “flight” occurred before knowing the approaching individuals were law enforcement); Marshall ex rel. Gossens v. Teske, 284 F.3d 765 (7th Cir.2002) (concluding there was improper provocation of flight where the defendant “did what any sane person would do if he saw masked men with guns running toward him” and ran).
When the defendant took off running in this high-crime area and continued to run even after Detective A yelled for him to stop, Detective A had reasonable suspicion to believe that the defendant was engaged *614 in criminal activity. See Franklin, 323 F.3d at 1302.

Conclusion

Based on the cases of C.E.L., Wardlow, and Franklin, as applied to the record before us, we reverse and remand with directions to vacate the suppression order and to enter an order denying the motion.
Reversed and remanded.

. The detectives are identified by their full names in the record, and by the first initial of their last names here.

. Detectives A, P, and W were the only witnesses who testified at the suppression hearing.