[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11549
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cr-00205-WTM-CLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CALVIN JAMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(October 14, 2020)

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Calvin James, proceeding pro se, appeals his conviction for possessing a firearm as a convicted felon, in violation of 18 U.S.C. section 922(g)(1). On appeal, James argues that the government violated his Fourth, Fifth, and Sixth Amendment rights and that the evidence against him was insufficient. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In May 2018, James and another man were sitting on bicycles with no lights in the middle of a dark street in a "high crime area" of Savannah, Georgia. Police officers in an unmarked van patrolling the high crime area saw that James and the other man were in the middle of the street, without lights, blocking traffic, and that a passing car had to swerve around them. Officers with vests marked "police" exited the van and, as they approached the two men, James immediately ran. The officers chased James and, as they were running, saw James reach for a gun and told him to drop it. Instead, James threw the firearm and a small bag over a fence along the road they were running down. The officers caught up to James and took him into custody. The officers then went to where they saw James throw the firearm and the bag. They found the firearm lying on the grass with a bag of marijuana close by.

The State of Georgia charged James with possession of a firearm by a convicted felon; purchase, possession, manufacture, distribution, or sale of marijuana; tampering with evidence; obstruction; and carrying a weapon without a valid license. Four months later, a federal grand jury indicted James for possessing

2

a firearm as a convicted felon, in violation of 18 U.S.C. section 922(g)(1). James was still in state custody, so the district court issued a writ of habeas corpus ad prosequendum for the United States Marshals to bring James to his initial appearance and arraignment in federal court. At the initial appearance, the district court found James indigent and appointed an attorney to represent him—Jonathan B. Phillips. Mr. Phillips was eventually replaced by Craig Bonnell after James said that he was not satisfied with Mr. Phillips.

Then James said he was not satisfied with his second appointed attorney. The magistrate judge held an "attorney inquiry" hearing. At the hearing, James said that he was not happy with Mr. Bonnell because Mr. Bonnell refused to file motions for him and did not show him the evidence in the case. James said that Mr. Bonnell had discussed with him the potential sentence if he was convicted and the pros and cons of a negotiated plea. The magistrate judge explained to James that he had a right to counsel, but that right was limited. The magistrate judge stressed that if James did not want Mr. Bonnell to represent him, he could represent himself, but that this would "not be in [his] best interest." James said that he would prefer to represent himself and the magistrate judge conducted a Faretta[1] inquiry. The magistrate judge made clear to James that there were many dangers involved with representing himself, including that he may not be able to raise certain issues on appeal. James

---

[1] Faretta v. California, 422 U.S. 806 (1975).

3

said that he felt like he had no choice but to represent himself. After further warning of the dangers of self-representation by the magistrate judge, James agreed to give Mr. Bonnell another "shot," but said that "[i]f [it was] not what [he was] looking for in a week" he would "rather represent [himself] before [he] let somebody else play with [him]."

At trial, James decided shortly after jury selection began that he preferred to represent himself. The district court held a Faretta hearing and concluded that James knowingly and voluntarily waived his right to counsel. The district court appointed Mr. Bonnell as "standby counsel." After hearing the evidence, the jury found James guilty. The district court sentenced James to 120 months in prison, followed by three years of supervised release.

James, still representing himself, appeals his conviction.

## STANDARD OF REVIEW

We review constitutional errors de novo. United States v. Williams, 527 F.3d 1235, 1239 (11th Cir. 2008). However, issues not raised in the district court, including constitutional issues, are reviewed for plain error. United States v. Hano, 922 F.3d 1272, 1283 (11th Cir. 2019). "For there to be plain error, there must (1) be error, (2) that is plain, and (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." Id. (citation omitted). "[W]e read briefs filed by pro se litigants

4

liberally" to determine the issues being raised on appeal. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

## DISCUSSION

James raises four main issues on appeal, each with its own sub-issues. First, he argues that state and federal officers violated his Fourth Amendment right to be free from unreasonable searches and seizures. Second, he argues that the government violated his Fifth Amendment due process and double jeopardy rights. Third, he argues that the magistrate judge violated his Sixth Amendment right to counsel. Fourth, he argues that the evidence against him was insufficient. And James raises three miscellaneous issues, arguing that the government: a) did not follow its oath to uphold the Constitution; b) failed to offer him a negotiated plea deal; and c) improperly altered his judgment and docket sheet.

*Fourth Amendment Issues*

James argues that the government violated his Fourth Amendment rights in three ways: 1) the officers illegally approached and seized James, in violation of Terry v. Ohio, 392 U.S. 1 (1968); 2) the officers searched for the firearm in the private fenced-in area without a warrant; and 3) the marshals, with no finding of probable cause, took James into custody without showing him an arrest warrant at the time of arrest.

5

James waived these Fourth Amendment arguments because he did not move in the district court to suppress the search and his arrest and he has not shown good cause to excuse his failure. See United States v. Lall, 607 F.3d 1277, 1288 (11th Cir. 2010) ("[A] defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal. . . . Motions to suppress illegally obtained evidence must be made prior to trial or such objections are deemed waived, . . . though this waiver may be excused for good cause."). But even if James didn't waive his suppression issues, there was no violation of his Fourth Amendment rights.

First, James argues that officers violated Terry because, after he ran away, they chased him down and detained him. But "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30).

The officers had reasonable suspicion here. When the officers first approached James and the other man, the officers wanted to ask them about why they were sitting in the middle of a dark street in a "high crime area," blocking traffic, with no lights on their bicycles. At this point, the officers were not required to have a reasonable suspicion of criminal activity because "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." See United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012)

(citation omitted).  However, as the officers exited their van, James looked at them and immediately dropped his bicycle and ran off.  Now, the officers needed reasonable suspicion to (briefly) detain James—and they had it.  James's "headlong flight" as the officers approached gave the officers a reasonable suspicion that James may be involved in criminal activity.  See United States v. Franklin, 323 F.3d 1298, 1300, 1302 (11th Cir. 2003) (holding that police officers had reasonable suspicion to conduct a brief, investigatory stop where the defendant "ran away at full speed as soon as he saw the officers"); see also Wardlow, 528 U.S. at 124–25 ("Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.").

Second, James argues that officers searched for the firearm in the private fenced-in area in violation of his Fourth Amendment rights because they did not have a search warrant.  But, "an individual's Fourth Amendment rights are not infringed—or even implicated—by a search of a thing or place in which he has no reasonable expectation of privacy."  United States v. Ross, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc).  "This issue—whether an individual has a reasonable expectation of privacy in the object of the challenged search—has come to be known as Fourth Amendment 'standing.'"  Id.

James does not have Fourth Amendment standing to challenge the search of the fenced-in area for the firearm. In his initial brief, he admits that the fenced-in area was not his property. And at trial, the evidence showed that the fenced-in area belonged to someone else—not James.

Third, James argues that his Fourth Amendment rights were violated because the marshals took him into custody without showing him "a warrant at the time of arrest" and without there having been a "determination of probable cause." But there is no requirement that an arrestee must be shown an arrest warrant at the time of the arrest. See Fed. R. Crim. P. 4(c)(3)(A) ("If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the original or a duplicate original warrant to the defendant as soon as possible."). And the grand jury, having indicted James for possessing a firearm as a felon, found probable cause that he violated federal law. See Kalina v. Fletcher, 522 U.S. 118, 129 (1997) ("The Fourth Amendment requires that arrest warrants be based 'upon probable cause, supported by Oath or affirmation'—a requirement that may be satisfied by an indictment returned by a grand jury[.]").

*Fifth Amendment Issues*

James argues that his Fifth Amendment due process and double jeopardy rights were violated because: 1) he was not advised of his right to a preliminary

8

hearing and to be indicted by a grand jury; 2) he was not allowed to participate in the grand jury proceedings and select grand jurors; 3) he was not given Officer Lyndsay Lyons's statement prior to her testimony at trial; and 4) he was charged with the same crime in federal and state court. James did not raise the first three arguments at trial, but even if he had, there was no error, plain or otherwise.

First, James did not have a right to a preliminary hearing because he was indicted by the grand jury. See Fed. R. Crim. P. 5.1(a)(2) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless . . . the defendant is indicted[.]"). The magistrate judge did not advise James of his right to be indicted by a grand jury because he had already been indicted by the grand jury by the time of his initial appearance.

Second, James was not allowed to participate in the grand jury proceedings and to select grand jurors because he had no right to do so. To preserve secrecy, only attorneys for the government, the witness under examination, interpreters when needed, and a stenographer may attend grand jury proceedings. See Fed. R. Crim. P. 6(d)(1). The target of a grand jury's inquiry—here, James—does not have a constitutional right to appear before the grand jury. See United States v. Pabian, 704 F.2d 1533, 1538–39 (11th Cir. 1983) ("A target of a grand jury investigation has no constitutional right to appear before that grand jury."). And grand jurors are not selected by the target of the grand jury inquiry, but by the district court. See Fed. R.

Crim. P. 6(a)(1)–(2), (c) ("When the public interest so requires, the <u>court</u> must order that one or more grand juries be summoned. . . . [T]he <u>court</u> may also select alternate jurors. . . . The <u>court</u> will appoint one juror as the foreperson and another as the deputy foreperson.") (emphasis added).

Third, without exculpatory information—and James does not allege that Officer Lyons had any exculpatory information—the government was not required to give James Officer Lyons's grand jury testimony because Officer Lyons didn't testify at trial. <u>See</u> 18 U.S.C. § 3500(a) ("[N]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."); <u>United States v. Liuzzo</u>, 739 F.2d 541, 544 (11th Cir. 1984) ("[T]he Jencks Act require[s] the prosecutor to permit defense counsel to examine the witness' grand jury testimony only after the witness ha[s] given his direct testimony at the trial." (citations and quotation marks omitted)).

Fourth, James argues that the government violated his double jeopardy rights by prosecuting him at the same time he was being prosecuted by the State of Georgia. But the double jeopardy clause does not bar successive prosecutions by a state and the federal government because they are separate sovereigns. <u>Gamble v. United States</u>, 139 S. Ct. 1960, 1964 (2019) (holding that "[u]nder [the] 'dual-sovereignty'

10

doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute . . . [o]r the reverse may happen").

*Sixth Amendment Issues*

James argues that the magistrate judge violated his Sixth Amendment right to counsel by refusing to appoint a third lawyer to represent him. But where a court appoints a lawyer for an indigent defendant, the defendant does not have the right to a lawyer of his choice, nor does he have the right to demand a different appointed lawyer unless there is good cause. United States v. Garey, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc). Good cause exists where there is a fundamental problem between the defendant and his counsel, like a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that leads to an unjust verdict. Id.

Here, James said he was unsatisfied with his second appointed lawyer, Mr. Bonnell, so the magistrate judge held a hearing to discuss the issue. At the hearing, James said that Mr. Bonnell refused to file motions for him and to show him the evidence in the case. James confirmed that Mr. Bonnell had met with him five times and had discussed the potential sentence if he was convicted and the pros and cons of a negotiated plea. Mr. Bonnell explained that he and James disagreed on the strategy of filing a motion to suppress.

The magistrate judge explained to James that he had a right to counsel, but there were limits to that right. Mr. Bonnell said that he would "do everything in [his] power to be ready" for trial, but acknowledged James's "reluctance to engage with [him]." The magistrate judge stressed that if James did not want Mr. Bonnell to represent him, he could represent himself, but that this would "not be in [his] best interest." James said that he would prefer to represent himself and the magistrate judge conducted a Faretta inquiry. James then changed his mind and said that he wanted to give Mr. Bonnell another "shot," but said that "[i]f [it was] not what [he was] looking for in a week" he would "rather represent [himself] before [he] let somebody else play with [him]." At the end of the hearing, the magistrate judge noted that "James [was] willing to proceed with his current counsel, Mr. Bonnell" and advised James that he may file a motion to proceed without counsel at a later time if he wished to do so.

The magistrate judge did not abuse his discretion in finding there was no good cause to appoint a third attorney. See United States v. Calderon, 127 F.3d 1314, 1343 (11th Cir. 1997) ("Where . . . a district court conducts an inquiry into the merits of a criminal defendant's motion for new counsel, we review the [] judge's ruling for abuse of discretion."). The magistrate judge held a hearing where he thoroughly questioned James and Mr. Bonnell. The magistrate judge asked about the details of their relationship, asked what work Mr. Bonnell had done on the case, and followed

12

up with pointed questions about their disagreements and the potential to move past them and work together to prepare for trial. Mr. Bonnell assured the magistrate judge that he was still ready and able to represent James if James was willing to work with him. James agreed to work with Mr. Bonnell. The record supports the magistrate judge's conclusion that there was not a "complete breakdown in communication" or an "irreconcilable conflict" and therefore that there was no good cause to appoint a third lawyer. See United States v. Joyner, 899 F.3d 1199, 1205–06 (11th Cir. 2018) (holding there was no abuse of discretion where magistrate judge found no good cause to appoint new counsel despite defendant's argument that there was "a complete breakdown in communication between him and his appointed counsel" because "counsel refused to heed his argument that the police used excessive force when they arrested him and searched his car").

*Sufficiency of the Evidence*

James argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he possessed the firearm. We normally review the sufficiency of the evidence to support a conviction de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in the government's favor. See United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007). However, because James did not challenge the sufficiency of the evidence in the district court, our review is only for a "manifest

13

miscarriage of justice." United States v. Tagg, 572 F.3d 1320, 1323 (11th Cir. 2009). We will reverse only if we find "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id. (citation and quotations omitted).

Here, the government's evidence that James possessed the firearm was more than sufficient. Two officers testified that they saw James pull a firearm from his waistband and throw it over a fence as he was running. They saw James reach back into his waistband, pull out a small bag, and throw it over the same fence. Consistent with the officers' testimony, the officers' bodycam video showed James throw two objects over the fence. The officers that found the firearm testified that they "quickly" found it in clear view, on the other side of the fence that James ran past, and that the firearm looked like it had been "freshly placed" on the ground. They also found a small bag of marijuana close to the firearm, which was consistent with the officers' testimony, and the bodycam footage, that James threw two objects over the fence. James cannot show that the government's evidence of his possession of a firearm was so tenuous that his conviction was shocking. See United States v. Hamblin, 911 F.2d 551, 557 (11th Cir. 1990) (holding evidence of possession of a firearm was sufficient where "two government witnesses . . . identified [the defendant] as the [armed] robber").

*Miscellaneous Issues*

James also argues that the government: 1) did not follow its oath to uphold the Constitution; 2) failed to offer him a negotiated plea deal; and 3) improperly altered his judgment and docket sheet by adding a new charge. Because James doesn't explain how the government did not follow its oath beyond his ambiguous, conclusory, and unsupported allegations, there is nothing for us to address on appeal. See Univ. of Alabama Bd. of Trustees v. New Life Art, Inc., 683 F.3d 1266, 1280 n.41 (11th Cir. 2012) ("ambiguous and conclusory assertions" do not "fairly raise the issue on appeal"). Second, the government is not required to offer plea deals to defendants. See United States v. Palmer, 809 F.2d 1504, 1508 (11th Cir. 1987) ("The government [is] under no obligation to enter into any plea bargaining or to accept any deal offered by [a defendant]."). And third, James offers no evidence that the government "altered" his judgment and docket sheet. The judgment and docket sheet listed section 924(a)(2), the penalty provision for his felon-in-possession conviction, in addition to section 922(g)(1), the substantive provision of the offense, which was consistent with the jury's verdict and the district court's sentence.

**AFFIRMED.**[2]

---

[2] All outstanding motions are DENIED.