**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-11383

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSEPH SHANE PERKINS,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:22-cr-00254-LCB-HNJ-1

————————————————

Before GRANT, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Joseph Perkins appeals his conviction and sentence for knowingly possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred in

denying his motion to suppress evidence obtained at the time of his arrest, including the firearm, and that his conviction should be vacated because § 922(g)(1) is unconstitutional under the Second Amendment. We affirm.

## I.

Perkins was arrested after a late-night traffic stop conducted by Madison County, Alabama Sheriff's Deputy Andrew Bates. Deputy Bates and another officer, Lieutenant Whisante, parked their marked patrol cars across a four-lane highway from a chiropractor's office in a high-crime area known for burglaries and drug crimes. It was about 1:30 in the morning, and the chiropractor's office and other nearby businesses were closed. The parking lot was dark except for streetlights along the highway in front of the chiropractor's office.

As the officers watched, an SUV appeared from the far side of the chiropractor's office, crossed in front of the office through the area illuminated by the nearby streetlights, and continued along the side of the building closest to the patrol cars. The SUV stopped near the back corner of the building, and a man and woman got out. They lifted the hood and poured some kind of liquid into the engine compartment, then closed the hood and got back in the vehicle. The SUV then circled around the back of the building and along the far side and headed for the highway.

Deputy Bates considered this activity suspicious for a few reasons. As far as he knew, there was no roadway on the far side of the chiropractor's office, only other closed businesses and a fence

separating the commercial buildings from a few mobile homes and other residences.  He did not know how long the SUV had been in the parking lot on the other side of the chiropractor's office or what the occupants had been doing there, but he found it suspicious that they were circling around the closed office in the middle of the night.  He was also skeptical about the sincerity of their car-maintenance efforts; he later described their activity as "doing meth-head stuff" and "acting like they were messing with their car."  He thought if they genuinely needed to work on the car they would have stopped near the streetlights at the front of the office instead of in the darker area near the back of the building, and they might have asked the officers for help.  He believed the occupants had noticed the police cars as they were crossing in front of the chiropractor's office and suspected that they faked car trouble to allay the officers' suspicions.  In his experience, criminals in the area frequently pretended to work on their cars to avoid or "abate" police while they decided on a plan of action or got rid of evidence.

So Deputy Bates decided to pull the SUV over and investigate.  He and Lieutenant Whisante crossed the highway in their patrol cars, and Deputy Bates turned on his blue lights.  The driver brought the SUV to a screeching stop and thrust her hands out the driver's-side window.  The passenger—Perkins—got out of the vehicle and ran.  Deputy Bates chased him on foot, yelling "hey, get back here" and "you're gonna get tased."  Perkins kept running until Deputy Bates tased him and he fell to the ground.

Perkins had a used glass pipe in his hand—which Deputy Bates discovered while handcuffing him—and when asked if he had anything else, he admitted that he had a firearm and methamphetamine in his pockets. After the officers read Perkins his *Miranda* rights, he also admitted that he was a convicted felon.

Perkins was charged in federal court with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the evidence found on his person and the statements he made to the officers at the time of his arrest, arguing that the officers lacked reasonable suspicion to stop the SUV, and that Deputy Bates lacked probable cause to arrest him when he tased him. The district court held an evidentiary hearing, at which Deputy Bates testified, and then denied the motion.

Perkins also filed a motion to dismiss the indictment on the ground that § 922(g)(1) was unconstitutional under the Second Amendment and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). The district court disagreed and denied that motion too.

Perkins entered a guilty plea pursuant to a plea agreement in which he preserved the right to appeal the adverse rulings on his motions to suppress evidence and to dismiss the indictment. He raises both issues in this appeal.

## II.

When reviewing a district court's denial of a motion to suppress evidence, we review the court's factual findings for clear error, construing all facts in the light most favorable to the prevailing

party, and its application of the law to those facts de novo. *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). We review a district court's ruling on a motion challenging the constitutionality of a statute de novo. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009).

## III.

## A.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV; *see* U.S. Const. amend. XIV. A police officer may conduct a warrantless arrest without offending the Fourth Amendment "if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *D.C. v. Wesby*, 583 U.S. 48, 56 (2018). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 57 (quotation omitted). In the absence of probable cause, a police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," but it "requires at least a minimal level of objective justification for making the stop." *Id.* A search or seizure that violates the Fourth Amendment may trigger the exclusionary rule, which generally requires courts to exclude

illegally obtained evidence. *United States v. Watkins*, 13 F.4th 1202, 1210 (11th Cir. 2021).

A person is seized by the police when an officer restrains his freedom of movement through physical force or show of authority. *Brendlin v. California*, 551 U.S. 249, 254 (2007). Ordinarily, an officer who conducts a traffic stop seizes any passenger in the vehicle in addition to the driver—at least when the passenger remains seated in the vehicle after the stop. *Id.* at 255–58, 262. But an attempt to detain a person through a show of authority without physical contact is not a seizure under the Fourth Amendment if the suspect does not submit to the assertion of authority. *Id.* at 254, 262; *California v. Hodari D.*, 499 U.S. 621, 626–28 (1991). When a suspect flees rather than obey a show of authority commanding him to stop, he is not seized until he submits or physical contact is made. *Hodari D.*, 499 U.S. at 626, 629; *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003).

Perkins was not seized until Deputy Bates tased him. The driver brought the SUV to a stop in response to the flashing blue lights, but Perkins got out of the vehicle and ran immediately afterward—the "'show of authority' did not produce his stop." *Hodari D.*, 499 U.S. at 628 (quotation omitted).

This means that, in determining whether Deputy Bates had reasonable suspicion or probable cause to seize Perkins, we consider all the information available to him leading up to the moment that Perkins was tased. *See Franklin*, 323 F.3d at 1301. That includes Perkins's presence in the parking lot of a closed business in a high-

crime area in the middle of the night, the fact that Perkins and the driver of the SUV passed through a better-lighted area in front of the chiropractor's office and stopped (after apparently noticing the patrol cars) in a darker spot near the back of the building to work on the car, their attempt to drive away after spotting the officers, and Perkins's headlong flight after Deputy Bates stopped the SUV.[1]

Perkins's presence in the parking lot of a closed business in the middle of the night in a high crime area gave rise to a reasonable suspicion that he might be engaged in criminal trespass in the third degree, in violation of Alabama Code § 13A-7-4. Under that statute, a person commits third-degree criminal trespass "when he knowingly enters or remains unlawfully in or upon premises." Ala. Code § 13A-7-4(a). The term "premises" includes both buildings and real property. Ala. Code § 13A-7-1(5). "A person 'enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so." *Id.* § 13A-7-1(3). A person is licensed and privileged to enter or remain on premises that are "at the time open to the public," unless the person defies a personally communicated lawful order not to enter or remain. *Id.* This implies that

---

[1] Contrary to Perkins's argument, the officers did not improperly provoke his flight by stopping the SUV. First, as we will explain, the traffic stop was not improper. Second, in determining whether the police improperly provoked a suspect's flight—for example, through fraud—we "ask whether a reasonable and innocent person facing this situation would have been caused to flee in the same manner." *Franklin*, 323 F.3d at 1302. We see nothing in Deputy Bates's use of his patrol car's lights that would have caused a reasonable, innocent person to flee.

in general, no license or privilege exists to enter on premises when they are *not* open to the public. And according to the Alabama Attorney General—whose opinions are persuasive but not binding on Alabama courts—people in a commercial parking lot "hours after closing are *not* privileged or licensed to be on the premises." Ala. Op. Atty. Gen. No. 88-00414 at 3 (Aug. 11, 1988) (emphasis added).

So Perkins's presence in the parking lot of a closed business in the middle of the night at least created an ambiguity as to whether he was knowingly present in the parking lot without a license, invitation, or privilege to be there in violation of Alabama Code § 13A-7-4(a). The odd choice to conduct car maintenance in a dark area when better lighting was available and the attempt to drive away after spotting the police added to the level of suspicion and considered cumulatively, justified detaining the occupants of the vehicle long enough to resolve the ambiguity. *See Wardlow*, 528 U.S. at 125. We reached a similar conclusion under very similar circumstances in *United States v. Briggman*, in which an experienced officer reasonably suspected criminal activity when he saw the defendant "parked in a parking lot at 4:00 a.m. in a high crime area, when commercial establishments served by the lot were closed for the night," and the defendant drove away after the officer circled the lot in his patrol car. 931 F.2d 705, 707, 709 (11th Cir. 1991).

Once Deputy Bates attempted to detain the occupants of the SUV and Perkins fled on foot, the officer's reasonable suspicion that Perkins was engaged in criminal activity ripened into probable cause. "While flight from a law enforcement officer cannot

24-11383              Opinion of the Court                9

support alone a determination of probable cause, flight can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action." *United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir. 1976).[2] Deputy Bates already had reason to believe that Perkins was present in the parking lot of a closed business without license, invitation, or privilege, but until he fled, the evidence did not necessarily indicate a "probability or substantial chance" that Perkins knew he was trespassing. *Wesby*, 583 U.S. at 57; *see Allison v. City of Birmingham*, 580 So. 2d 1377, 1385 (Ala. Crim. App. 1991) ("The offense of criminal trespass requires that one act knowingly."). Perkins's flight and refusal to submit to Deputy Bates's commands to stop supplied the necessary indication of his guilty mens rea. "[D]eliberately furtive actions and flight at the approach of law officers are *strong* indicia of *mens rea*." *Wesby*, 583 U.S. at 59 (alteration adopted, emphasis in the original, quotation omitted). And "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124.

We reject Perkins's argument that his detention was illegal because the officers lacked probable cause to arrest him for the separate offense of criminal trespass by motor vehicle, which involves parking in or repeatedly driving through a parking lot marked as

---

[2] Decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

private property after being asked not to do so by a law enforcement officer or the owner or agent. *See* Ala. Code § 13A-7-4.1. Both trespassing offenses involve similar behavior, but unlike the misdemeanor offense of trespassing in a motor vehicle, the lesser "violation" of criminal trespass in the third degree does not require no-trespassing signs or any other warning to the offender. *See* Ala. Code § 13A-7-4; *Howard v. State*, 506 So. 2d 351, 353 (Ala. Crim. App. 1986).

Because Deputy Bates had probable cause to believe that Perkins was engaged in third-degree criminal trespass when he tased him, his detention of Perkins was constitutional whether we view it as a temporary investigative stop or an arrest. *See Wesby*, 583 U.S. at 56; *Wardlow*, 528 U.S. at 123.

**B.**

Perkins also argues that the felon-in-possession statute, 18 U.S.C. § 922(g), is unconstitutional under the Second Amendment, *Bruen*, and *United States v. Rahimi*, 602 U.S. 680 (2024). His argument is foreclosed by our binding precedent.

In *United States v. Rozier*, we held that § 922(g)(1)'s prohibition on the possession of firearms by felons did not violate the Second Amendment. 598 F.3d 768, 771 (11th Cir. 2010). And in *Dubois v. United States*, on remand from the United States Supreme Court following *Rahimi*, we concluded that neither *Bruen* nor *Rahimi* abrogated our decision in *Rozier*. 139 F.4th 887, 888–89, 892–94 (11th Cir. 2025).

As we explained in *Dubois*, *Rozier* relied on *D.C. v. Heller*, 554 U.S. 570 (2008), for the proposition that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id*. at 891 (quoting *Rozier*, 598 F.3d at 771); *see Heller*, 554 U.S. at 626 ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ."). *Bruen* and *Rahimi* did not abrogate *Rozier* because they did not "demolish" or "eviscerate" *Rozier*'s "fundamental props." *Dubois*, 139 F.4th at 893 (quotation omitted). Far from undermining our reliance on *Heller*, *Bruen* made clear that its analysis was consistent with *Heller* and described the Second Amendment as protecting "the right of law-abiding, responsible citizens to use arms." 597 U.S. at 26 (quoting *Heller*, 554 U.S. at 635). *Rahimi* did not mention § 922(g)(1) at all, and it reiterated that prohibitions "like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 602 U.S. at 699 (quoting *Heller*, 554 U.S. at 626). Under our prior-precedent rule, we are bound by *Rozier*'s conclusion that § 922(g) is consistent with the Second Amendment. *See Dubois*, 139 F.4th at 892–93.

## IV.

The district court did not err in denying Perkins's motion to suppress evidence because the arresting officer had probable cause to believe that he was engaged in Alabama third-degree criminal trespass when the officer used his taser to detain Perkins. And because we remain bound by our prior precedents, we reject Perkins's Second Amendment challenge to 18 U.S.C. § 922(g)(1).