[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10405
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-00150-WKW-SMD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT WILLIAMS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 4, 2021)

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Robert Williams, Jr., appeals his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possessing

controlled substances in violation of 21 U.S.C. § 844(a). Williams makes two arguments on appeal. First, he argues that the district court erred in denying his motion to suppress evidence seized by a police officer during a warrantless search. Second, Williams argues that the court erred by denying his request for a sentencing reduction for accepting responsibility. After careful consideration, Williams's conviction and sentence are AFFIRMED.

## I.

At about 2:15 a.m. one morning, Officer Kaufmann and his trainee conducted a traffic stop of a motorcycle that had been traveling at 57-miles-per-hour in a 40-miles-per-hour zone. Williams, who was driving the motorcycle, was wearing an "Outcast Motorcycle Club" leather jacket. A female passenger, Mack, riding on the back of the motorcycle, was also wearing an OMC vest. Officer Kaufmann knew that there was an OMC rally in town that night and was aware of a large fight at an OMC rally the previous year, in which someone was "severely beaten." Earlier that night, Officer Kaufmann and his trainee had responded to a call for backup related to an OMC traffic stop. There, another officer had stopped a man wearing an OMC jacket who was also riding a motorcycle with a female passenger. A large group of OMC motorcycle riders had gathered around the traffic stop, and the officer found three pistols on the driver's person.

2

With this in mind, Officer Kaufmann approached Williams. As he approached, he saw Williams furtively pass Mack a cigarette pack, which she hid between her legs. He asked Williams why he had handed the cigarette pack to Mack, and Williams asked why he needed to know. Officer Kaufmann then asked Mack for the cigarette pack. She was "frozen" and did not respond until Williams told her to give the cigarette pack to Officer Kaufmann. Mack then gave Officer Kaufmann the pack. A "quick flip of the lid" allowed Officer Kaufmann to the see the contents of the pack—cocaine and oxycodone pills.

Officer Kaufmann then patted down Williams and found a pistol on his right hip. He testified that he patted down Williams for two reasons: first, because his jacket identified him as a member of the motorcycle gang, and second, because he had just passed a container to Mack that contained narcotics. After Officer Kaufmann found the gun, he placed Williams under arrest and charged him on the scene for possession of a controlled substance and carrying a firearm without a valid permit. Officer Kaufmann searched the motorcycle in relation to the arrest and found another weapon.

The government indicted Williams on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and two counts of possessing controlled substances in violation of 21 U.S.C. § 844(a). Williams filed a motion to suppress the evidence seized during Officer Kaufmann's search, which he argued

3

was unlawful. The magistrate judge held a hearing on Williams's motion, after which he recommended that Williams's motion be denied. The recommendation was based upon three findings that are relevant here: first, that the search of the cigarette pack was consensual; second, if the search was not consensual, the officer still had reasonable suspicion to conduct a *Terry* protective search of the cigarette pack; and third, the officers would have inevitably discovered the drugs in the cigarette pack by patting down Williams to protect their personal safety, at which point they would have found the pistol, arrested him, and conducted a search of the cigarette pack incident to his arrest.

Williams objected to the magistrate judge's findings that he consented to the search of the cigarette pack; that the officers had particularized reasonable suspicion to search either the cigarette pack or Williams's person for weapons; and, consequently, that discovery of the drugs was inevitable. The district court overruled the objections, adopted the magistrate judge's recommendations, and denied Williams's motion to suppress.

After a trial, Williams was convicted by a jury of all counts. A probation officer calculated Williams's offense level without a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. His total offense level of 15 and criminal history category of II resulted in a guideline imprisonment range of 21 to 27 months. Williams objected in writing to the denial of a two-level reduction in offense level

4

for acceptance of responsibility. At his sentencing hearing, Williams again objected to the denial of a two-level reduction to the offense level for acceptance of responsibility. The district court overruled his objections and adopted the guideline calculations set forth in the PSR before sentencing Williams to a prison term of 27 months.

## II.

On appeal, Williams makes two arguments. First, Williams argues that the district court erred in denying his motion to suppress the evidence seized by Officer Kaufmann during the traffic stop. Second, he argues that the court erred by denying his request for a sentencing guidelines reduction for acceptance of responsibility. We address both arguments in turn.

First, Williams argues that the district court's three reasons for denying his motion—that he voluntarily consented to the search of the cigarette pack, that Officer Kaufmann could search the pack pursuant to a *Terry* protective search, or that the evidence was admissible under the inevitable discovery doctrine—are erroneous. The government argues that the totality of the circumstances shows that Williams consented to the search. Alternatively, the government argues that Officer Kaufmann was authorized to conduct a protective search of the pack or, at the very least, of Williams's person, which would have inevitably led to a justifiable search of the pack. We agree with the government that, under these circumstances, Officer

Kaufmann was authorized to conduct a protective search of the pack. Therefore, the evidence retrieved from the pack was admissible and the district court properly denied Williams's motion to suppress.

In reviewing a denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of the law *de novo. United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). "[W]hen considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). To be clearly erroneous, the finding of the district court must leave us "with a definite and firm conviction" that a mistake has been made. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). The district court's choice between two permissible interpretations of the evidence will rarely constitute clear error, as long as the basis of the court's decision is supported by the record and the court did not misapply a rule of law. *United States v. Monzo*, 852 F.3d 1343, 1345 (11th Cir. 2017) (quoting *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc)).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The Supreme Court has held that it is not unreasonable for police officers to conduct brief, warrantless, investigatory stops when they have reasonable, articulable suspicion of criminal activity. *United States*

6

*v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Officers conducting such *Terry* stops may "take such steps as [are] reasonably necessary to protect their personal safety." *United States v. Purcell*, 236 F. 3d 1274, 1277 (11th Cir. 2001) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). We have held that, under *Terry*, an officer during a traffic stop may conduct a protective search of the driver, the passengers, or the vehicle as necessary to ensure officer safety. *Id.*

Whether reasonable suspicion exists depends on the "totality of the circumstances." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266 (2002)). The totality of the circumstances must establish "specific and articulable facts which, taken together with rational inferences from those facts," reasonably warrant the search. *Terry*, 392 U.S. at 21. In gauging the totality of the circumstances, courts may not consider each fact in isolation, but must consider their cumulative effect; reasonable suspicion may exist even if each fact in isolation can be given an innocent explanation. *Hunter*, 291 F.3d at 1306.

The district court did not clearly err in finding that the circumstances facing Officer Kaufmann justified a protective search of Williams generally and the pack specifically. Officer Kaufmann stopped Williams for speeding at 2:15 in the morning. Williams and his passenger were both wearing clothing identifying them

7

as members of a motorcycle gang that had been linked to violent activity. Officer Kaufmann knew about a violent fight that occurred at an OMC rally the year before and had just participated in a similar traffic stop hours before in which an OMC member on a motorcycle was carrying three firearms. When Officer Kaufmann approached Williams, he became suspicious when he saw Williams furtively pass the cigarette pack to Mack, who quickly concealed it between her legs. Then, when he asked Williams about the pack, Williams gave an evasive answer that reasonably heightened Officer Kaufmann's suspicions.

Williams argues that a cigarette pack is small and, therefore, not the usual kind of item subject to a protective *Terry* search. But, given the totality of the circumstances here, a reasonably prudent officer in Kaufman's position would be justified in securing and inspecting the pack. *Terry*, 392 U.S. at 27. Officer Kaufmann testified at the evidentiary hearing that he was concerned the pack might have held a small, lightweight weapon like a razor blade or pocket knife. That concern was reasonable in light of Williams's furtive movement to pass the pack to Mack as Officer Kaufmann approached, Mack's concealment of the pack, and Williams's evasive response to Officer Kaufmann's question. Mack had the pack on her person and, because Williams was stopped on a motorcycle rather than an automobile, the pack remained within his arm's reach as well. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (upholding protective search of a leather pouch in

8

passenger compartment of an automobile, where officers reasonably believed the driver was dangerous and the area was near enough to the driver that he could have gained immediate control of weapons if allowed to reenter the car). In these unique circumstances, Officer Kaufmann reasonably responded by requesting the pack and flipping open the lid to see what it contained.

The record here does not compel a different conclusion than the one the district court reached—that Officer Kaufmann's reasonable concern for his safety justified a protective search of the cigarette pack. Because the search is justified on that ground, there is no need to address the alternative grounds considered by the district court—namely, whether Williams consented to the search or whether the firearm or drugs were admissible under the inevitable discovery doctrine. Accordingly, this Court will affirm the district court's denial of the motion to suppress.

Second, Williams argues that the district court erred by denying him a downward adjustment for acceptance of responsibility. The government argues that the district court correctly denied the request because Williams forced the government to carry its burden at trial, he had two positive drug screens while on pretrial release, and his criminal history showed that he was continuing a pattern. In reply, Williams argues that he never contested the factual allegations associated with this matter and that the district court failed to consider several factors in support of

applying the reduction, such as his truthful admission of certain conduct and the timeliness of his conduct in manifesting acceptance of responsibility.

We review the district court's denial of a reduction for acceptance of responsibility for clear error. *United States v. Moriarty*, 429 F.3d 1012, 1022 (11th Cir. 2005). We will not set aside the district court's determination that an adjustment is unwarranted unless the facts in the record clearly establish that the defendant has accepted responsibility. *Id.* at 1022–23. Because of the sentencing court's unique position to evaluate acceptance of responsibility, the determination of the district court is afforded great deference. *Id.* at 1022.

The sentencing guidelines allow a two-step reduction in a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Appropriate considerations for an adjustment include whether the defendant: truthfully admitted the conduct comprising the offenses of conviction and either truthfully admitted or did not falsely deny any additional relevant conduct; voluntarily paid restitution prior to adjudication of guilt; voluntarily surrendered to authorities promptly after the commission of the offense; voluntarily terminated or withdrew from criminal conduct or criminal associations; voluntarily provided assistance to the authorities in recovering the fruits and instrumentalities of the offense; voluntarily resigned from any office or position held during the offense;

underwent any post-offense rehabilitative efforts; and timely manifested the acceptance of responsibility. *Id.*, cmt. n.1.

However, "[t]he adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying essential factual elements needed to show guilt, is subsequently convicted, and only then admits guilt and expresses remorse." *Id.*, cmt. n.2. In rare situations, a defendant convicted at trial can receive the adjustment, but he must clearly demonstrate acceptance of responsibility. For example, a defendant who goes to trial to assert and preserve issues that do not relate to factual guilt, such as challenging a statute's constitutionality or the applicability of a statute to his conduct, may receive an adjustment. *Id.* The district court may consider the nature of the defendant's legal challenges to his conviction and sentence, along with the other circumstances of the case, when determining whether to award credit for acceptance of responsibility. *United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997) (en banc).

Here, the district court did not clearly err by declining to apply a guidelines reduction for acceptance of responsibility. This is so for several reasons. First and foremost, Williams forced the government to carry its burden at trial. Although he stipulated to several key facts—that he was in fact a convicted felon, that the firearm at issue had traveled in interstate commerce, and that the drugs seized by Officer Kaufmann were cocaine and oxycodone—he denied that he knowingly possessed

11

the gun and drugs. Second, at trial, he suggested the possibility that he was not responsible at all, but that the drugs were put in the cigarette pack by his companion, Mack. Third, he violated the terms of his pretrial release by using marijuana. The district court did not clearly err by declining to apply a guidelines reduction for acceptance of responsibility.

## III.

For the foregoing reasons, the district court is **AFFIRMED.**